Thomas L. Simek
tsimek@cftc.gov
Jennifer J. Chapin
jchapin@cftc.gov
Attorneys for Plaintiff
COMMODITY FUTURES TRADING COMMISSION
4900 Main Street, Suite 500
Kansas City, MO 64112
(816) 960-7700

SEAN D. REYES (7969)
Utah Attorney General
Thomas M. Melton (4999), tmelton@agutah.gov
Robert Wing (4445), rwing@agutah.gov
Jennifer Korb (9147), jkorb@agutah.gov
Paula Faerber (8518), pfaerber@agutah.gov
Assistant Attorneys General
Attorneys for Plaintiff
STATE OF UTAH DIVISION OF SECURITIES
160 East 300 South, Fifth Floor
Salt Lake City, Utah 84114
(801) 366-0310

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>STATE OF UTAH DIVISION OF SECURITIES, through Attorney General, Sean D. Reyes,<br><br>     Plaintiffs,<br>v.<br><br>RUST RARE COIN INC., a Utah corporation, and GAYLEN DEAN RUST, an individual,<br><br>     Defendants; | [PROPOSED] ORDER GRANTING PLAINTIFFS' EX PARTE MOTION FOR STATUTORY RESTRAINING ORDER, APPOINTMENT OF RECEIVER, AND OTHER EQUITABLE RELIEF<br><br><br>Case No.   2:18cv00892<br><br>Judge:   Bruce S. Jenkins |

and

DENISE GUNDERSON RUST, an individual,
JOSHUA DANIEL RUST, an individual,
ALEESHA RUST FRANKLIN, an individual,
R LEGACY RACING INC, a Utah
corporation,  R LEGACY ENTERTAINMENT
LLC, a Utah limited liability company, and R
LEGACY INVESTMENTS LLC, a Utah
limited liability company.

Relief Defendants.

Plaintiffs Commodity Futures Trading Commission ("CFTC" or "Commission") and the

State of Utah Division of Securities, through Attorney General Sean D. Reyes ("State of Utah")

have filed a Complaint for Permanent Injunction and Other Relief and moved, pursuant to

Section 6c(a) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 13a-1(a) (2012) and Section

61-1-20(2) of the Utah Uniform Securities Act ("Securities Act") and in accordance with Federal

Rule of Civil Procedure ("Fed. R. Civ. P.") 65, for an ex parte statutory restraining order freezing

assets, allowing inspection of records, and appointing a Temporary Receiver.  The Court has

considered the pleadings, declarations, exhibits, and memorandum filed in support of the CFTC

and the State of Utah's motion, and finds that:

1.  This Court has jurisdiction over the parties and over the subject matter of this action

    pursuant to 28 U.S.C. § 1331 (2012) (federal question jurisdiction) and 28 U.S.C. § 1345

    (2012) (district courts have original jurisdiction over civil actions commenced by the

    United States or by any agency expressly authorized to sue by Act of Congress), as well

    as 28 U.S.C. § 1367(a) (supplemental jurisdiction over claims under Utah law).  7 U.S.C.

    § 13a-1 (2012), authorizes the CFTC to seek injunctive relief against any person

    whenever it shall appear that such person has engaged, is engaging, or is about to engage

in any act or practice that violates any provision of the Act or any rule, regulation, or order promulgated thereunder. Section 61-1-20(2) authorizes the State of Utah to bring an action to enjoin acts or practices that violate the Securities Act and seek injunctive and other relief upon a proper showing.

2. Venue lies properly within this District pursuant to 7 U.S.C. § 13a-1(e) (2012).

3. The CFTC and the State of Utah have made a proper prima facie showing that since at least 2008 and continuing to the present ("Relevant Period"), Defendants Gaylen D. Rust ("Rust") and his company Rust Rare Coin, Inc. ("RRC") (collectively, "Defendants") have engaged, are engaging, or are about to engage in a scheme to defraud investors in connection with a pooled investment that purported to enter into contracts of sale for silver, a commodity in interstate commerce (the "Silver Pool"). As part of this fraudulent scheme, Defendants made material misrepresentations and fraudulent omissions to existing and prospective investors, including that Defendants would use funds contributed by investors to purchase and trade physical silver; that the silver held in the pool would be stored at Brink's Incorporated ("Brink's") storage facilities in either Salt Lake City, Utah or Los Angeles, California; that Defendants had advance information regarding the movement of market prices for silver and would trade the silver held in their pool, selling silver immediately before a price decline and buying back a larger quantity of silver with the proceeds of that sale after prices had fallen; and that Defendants' trading generated consistent returns for investors in the Silver Pool of at least twenty to twenty-five percent or more. Rather than use funds contributed by investors to the Silver Pool to buy and trade silver, Defendants misappropriated these funds and used them to make payments to other investors, transfer money to other

3

companies owned by Rust, and pay personal expenses.

4. Therefore, there is good cause to believe that Defendants have engaged in, are engaging in, or are about to engage in a scheme to defraud investors in violation of Section 6(c) of the Act, 7 U.S.C. § 9(1) (2012), Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2018) and Sections 61-1-1(2)-(3) of the Securities Act. Defendants also have engaged in, are engaging in, or are about the engage in the offer and sale of securities in Utah that are not registered under the Securities Act, in violation of Section 61-1-7 of the Securities Act. In addition, Defendant Rust has engaged in, is engaging in, or is about to engage in the offering and selling securities without a license in violation of Section 61-1-3 of the Securities Act, and 61-1-7; and Defendant RRC has engaged in, is engaging in, or is about to engage in the employment of an unlicensed agent in violation of Section 61-1-3 of the Securities Act.

5. There is also good cause to believe that Relief Defendants Denise Gunderson Rust ("Denise Rust"), Joshua Daniel Rust ("Joshua Rust"), Aleesha Rust Franklin ("Aleesha Franklin"), R. Legacy Entertainment, LLC ("R. Legacy Entertainment"), R. Legacy Racing Inc. ("R. Legacy Racing"), and R. Legacy Investments LLC ("R. Legacy Investments") (collectively "Relief Defendants") have received, are receiving, or are about to receive funds, assets or other property as a result of Defendants' violative acts and practices and have been unjustifiably enriched thereby. The Relief Defendants do not have any legitimate interest or entitlement to these funds, assets or other property ("assets") received as a result of Defendants' violative conduct.

6. There is also good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for investors in the Silver Pool in the form of

monetary redress will occur from the withdrawal, transfer, removal, dissipation, or other disposition of assets, and/or the destruction, alteration, or disposition of books and records and other documents ("records") by Defendants and Relief Defendants, unless Defendants and Relief Defendants are immediately restrained and enjoined by Order of the Court.

7. Therefore, there is good cause for the Court to freeze assets owned, controlled, managed, or held by Defendants and Relief Defendants, or in which they have any beneficial interest.

8. There is also good cause for the Court to prohibit Defendants and Relief Defendants from destroying, altering, or disposing of records, and/or denying representatives of the CFTC or the State of Utah access to inspect records, when and as requested, to ensure that CFTC and State of Utah representatives have immediate and complete access to those records.

9. There is also good cause for the appointment of a Temporary Receiver to take control of all assets owned, controlled, managed, or held by Defendants and Relief Defendants or in which they have any beneficial interest ("Defendants' Assets" and "Relief Defendants' Assets"), so that the Temporary Receiver may preserve assets, investigate and determine customer claims, determine unlawful proceeds retained by Defendants and Relief Defendants and amounts due to customers as a result of Defendants' alleged violations, and distribute funds to customers harmed by Defendants' alleged misconduct under the Court's supervision.

10. There is also good cause to require an accounting by Defendants and Relief Defendants to the Temporary Receiver to determine the location and disposition of customer funds

and ill-gotten gains.

11. There is also good cause to order repatriation of funds, assets or other property controlled by Defendants so that such assets can be controlled by the Temporary Receiver and to assure payment of restitution and disgorgement as authorized by the Court.

12. In summary, this is a proper case for granting a restraining order ex parte freezing assets, allowing inspection of records, and appointing a temporary receiver because the CFTC and the State of Utah are likely to succeed on the merits of their claims against Defendants. Moreover, there is reasonable likelihood that Defendant(s) may transfer or dissipate assets or destroy or alter records. Therefore, the Court orders the following.

## DEFNITIONS

For purposes of this Order, the following definitions apply:

13. The term "assets" encompasses any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all funds, wherever located, whether in the United States or outside the United States.

14. The term "record" encompasses the terms "document" and "electronically stored information" as those terms are used in Fed. R. Civ. P. 34(a), and includes, but are not limited to, all writings, graphs, charts, photographs, sound recordings, images, and other data or other data compilations–stored in any medium from which information can be

obtained or translated, if necessary, into reasonable usable form. The term "record" also refers to each and every such item in Defendants' and Relief Defendants' actual or constructive possession, including but not limited to: (i) all such items within the custody or control of any agents, employers, employees, or partners of the Defendants and Relief Defendants; and (ii) all items which Defendants and Relief Defendants have a legal or equitable right to obtain from another person. A draft or non-identical copy is a separate item within the meaning of the term. Records also include the file and folder tabs associated with each original and copy.

15. "Defendants" refers to Rust and RRC.

16. "Relief Defendants" refers to Denise Rust, Joshua Rust, Aleesha Franklin, R. Legacy Entertainment, R. Legacy Racing, and R. Legacy Investments.

## RELIEF GRANTED

**IT IS HEREBY ORDERED that:**

**I.     Asset Freeze Order Prohibiting the Withdrawal, Transfer, Removal, Dissipation, and Disposal of Assets**

17. Defendants and Relief Defendants are immediately restrained and enjoined, except as otherwise ordered by this Court, from directly or indirectly withdrawing, transferring, removing, dissipating, or otherwise disposing of any assets, wherever located, including Defendants' and Relief Defendants' assets held outside the United States, except as provided otherwise in Sections IV, V, and VI of this Order, or as otherwise ordered by the Court;

18. Notwithstanding the provisions of this Section I, at the request of the Temporary Receiver, Defendant(s) and Relief Defendants and any other person who has possession, custody, or control of any of Defendants' or Relief Defendants' assets shall transfer

7

possession of all funds, assets or other property subject to this Order to the Temporary

Receiver in accordance with Section IV, V and VI of this Order.

19. The assets affected by this Order shall include existing assets as well as assets acquired

after the effective date of this Order.

**II.   Maintenance of and Access to All Records That Relate to the Business Activities and Business and Personal Finances**

20. Defendants and Relief Defendants are restrained from directly or indirectly destroying,

altering, or disposing of, in any manner, any records that relate or refer to the business

activities or business or personal finances of any Defendant or Relief Defendant.

21. Representatives of the CFTC and the State of Utah shall be immediately allowed to

inspect the records that relate or refer to business activities and business and personal

finances of Defendants and Relief Defendants, including, but not limited to, both hard-

copy documents and electronically stored information, wherever they may be situated and

whether they are in the possession of Defendants, Relief Defendants, or others.  To

ensure preservation and facilitate meaningful inspection and review of records,

Defendants and Relief Defendants shall allow representatives of the CFTC and the State

of Utah to make copies of any records, and if on-site copying of records is not

practicable, representatives may make such copies off-site.  The CFTC and the State of

Utah shall promptly return the original records after any such off-site copying.

22. To further facilitate meaningful inspection and review, Defendants and Relief Defendants

shall, absent a valid assertion of their rights against self-incrimination under the Fifth

Amendment, promptly provide CFTC and State of Utah staff with:

    a.   the location of all records relating or referring to the business activities and business

    and personal finances of Defendants and Relief Defendants; and

b. all identification numbers and other identifying information for websites, cloud storage services, email and smartphone accounts, and all accounts at any bank, financial institution, or brokerage firm (including any introducing broker or futures commission merchant) owned, controlled or operated by Defendants or Relief Defendants, or to which Defendants and Relief Defendants have access; and

c. all passwords to, and the location, make and model of, all computers and/or mobile electronic devices owned and/or used by Defendants or Relief Defendants in connection with their business activities and business and personal finances.

23. When inspecting records that are subject to this Order, including those contained on computers and/or other electronic devices, the CFTC and the State of Utah should undertake reasonable measures to prevent review of the Defendants' or Relief Defendants' privileged communications and/or other nonbusiness, nonfinancial materials by the CFTC's and the State of Utah's attorneys and other staff who are part of the litigation team in this matter. Moreover, Defendants and Relief Defendants (or their counsel) shall promptly contact counsel for the CFTC or the State of Utah to assert any claims of privilege (or other legal objections) relating to the contents of any records that are subject to this Order and promptly cooperate with counsel for the CFTC or the State of Utah to develop reasonable protocols to isolate and prevent disclosure of claimed privileged and/or other nonbusiness, nonfinancial materials to the CFTC's or the State of Utah's attorneys and other staff who are part of the litigation team in this matter. However, nothing herein shall excuse Defendants or Relief Defendants from full and immediate compliance with this Court's Order permitting the CFTC and the State of Utah to inspect the records which relate to Defendants' or Relief Defendants or Relief

Defendants' business activities and their business and personal finances.

### III. Notice to Financial Institutions and Others that Hold or Control Assets or Records of Defendants and Relief Defendants

24. To ensure the effectiveness of the asset freeze and pending further Order of this Court, any financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any assets of Defendants or Relief Defendants shall not, in active concert or participation with Defendants or Relief Defendants, permit Defendants or Relief Defendants or other persons to withdraw, transfer, remove, dissipate, or otherwise dispose of any of Defendants' or Relief Defendants' assets, except as directed by further order of the Court; and

25. Any financial or brokerage institution, business entity, or person that receives notice of this Order by personal service or otherwise shall not, in active concert or participation with any Defendants or Relief Defendants directly or indirectly destroy, alter, or dispose of, in any manner, any records relating to the business activities and business and personal finances of any Defendant or Relief Defendant.

26. Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any records or assets, titled in the name of, held for the benefit of, or otherwise under the control of any Defendants or Relief Defendants, or has held, controlled, or maintained custody of any such assets, of any Defendants or Relief Defendants at any time since January 2008, shall not, in active concert or participation with Defendants or Relief Defendants, deny a request by the CFTC or the State of Utah to inspect all records pertaining to any assets owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants or Relief Defendants, including, but not limited to, originals or

copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. As an alternative to allowing inspection of records, a financial or brokerage institution, business entity or other person may provide copies of records requested by the CFTC or the State of Utah.

27. Furthermore, any such financial or brokerage institution, business entity, or person that receives actual notice of this Order shall:

    a. Within ten business days of a request by the Temporary Receiver, or such longer period specified by the Temporary Receiver, provide the Temporary Receiver with copies of all records pertaining to any account or assets owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants or Relief Defendants, either individually or jointly, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

    b. Cooperate with all reasonable requests of the Temporary Receiver relating to implementation of this Order, including transferring Defendants' or Relief Defendants' assets, at the Temporary Receiver's direction, and producing records related to business activities or business or personal finances of Defendants or Relief Defendants to the Temporary Receiver.

## IV.    Order Appointing Temporary Receiver

28. Jonathan O. Hafen, Esq. of Parr Brown Gee & Loveless is appointed Temporary Receiver with the full powers of an equity receiver for Defendants and Relief Defendants and their affiliates or subsidiaries owned or controlled by Defendants or Relief Defendants (hereinafter referred to as the "Receivership Defendants"), and of all records, and all funds, properties, premises, accounts, income, now or hereafter due or owing to the Receivership Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants, (hereinafter, the "Receivership Estate"). The Temporary Receiver shall be the agent of this Court in acting as Temporary Receiver under this Order.

29. The Temporary Receiver is directed and authorized to accomplish the following:

    a. Assume full control of the Receivership Defendants by removing Rust or RRC, and any officer, independent contractor, employee, or agent of the Receivership Defendants, from control and management of the affairs of the Receivership Defendants as the Temporary Receiver deems appropriate;

    b. Take exclusive custody, control, and possession of the Receivership Estate, which includes but is not limited to complete authority to sue for, collect, receive, and take possession of all goods, chattels, rights, credits, money, effects, land, leases, books, records, work papers, and records of accounts, including electronically-stored information, contracts, financial records, funds on hand in banks and other financial institutions, and other papers and records of the Receivership Defendants, including any financial interests of investors in the Silver Pool or other investors now held by or under the direction, possession, custody, or control of the Receivership

Defendants;

c. Take all steps necessary to secure the business and other premises under the control of the Receivership Defendants, including but not limited to the premises of RRC located at 242 East 300 South, Salt Lake City, Utah 84111;

d. Perform all acts necessary, including the suspension of operations, to conserve, hold, manage, and preserve the value of the Receivership Estate in order to prevent irreparable loss, damage, or injury to Silver Pool investors or other investors in any investment opportunity operated by any Receivership Defendant.

e. Prevent the withdrawal or misapplication of the assets of the Receivership Estate and otherwise protect the interests of Silver Pool investors or other investors in any investment opportunity operated by any Receivership Defendant;

f. Manage and administer the Receivership Defendants and the Receivership Estate by performing all acts incidental thereto that the Temporary Receiver deems appropriate, including hiring or dismissing any and all personnel, suspending operations, and/or entering into agreements, including but not limited to: (1) the retention and employment of investigators, attorneys, or accountants, appraisers, and other independent contractors and technical specialists of the Temporary Receiver's choice, including without limitation members and employees of the Temporary Receiver's firm, to assist, advise, and represent the Temporary Receiver; and (2) the movement and storage of any equipment, furniture, records, files, or other physical property of the Receivership Defendants;

g. Collect all funds owed to the Receivership Defendants;

h. Initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to

any actions or proceedings in state, federal, or foreign court that the Temporary Receiver deems necessary and advisable to preserve or increase the value of the assets of the Receivership Estate or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver's mandate under this Order;

i. Issue subpoenas to obtain records pertaining to the Receivership and conduct discovery in this action on behalf of the Receivership Estate;

j. Open one or more bank accounts and deposit all funds of the Receivership Estate in such designated accounts and make all payments and disbursements from the Receivership Estate from such accounts;

k. Make payments and disbursements from the Receivership Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, provided that the Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except for payments that the Temporary Receiver deems necessary or advisable to secure the Receivership Estate from immediate and irreparable loss; and

l.  Maintain written accounts itemizing receipts and expenditures, describing properties held or managed, and naming the depositories holding funds or other assets of the Receivership Estate; make such written accounts and supporting documentation available to the CFTC for inspection; and, within sixty days of being appointed and periodically thereafter, as directed by the Court, file with the Court and serve on the parties a report summarizing efforts to marshal and collect assets, administer the Receivership Estate, and otherwise perform the duties mandated by

this Order.

## V. Accounting and Transfer of Funds and Records to the Temporary Receiver

30. Absent a valid assertion by Defendants or Relief Defendants of their respective rights against self-incrimination under the Fifth Amendment, each Defendant and Relief Defendant shall, within five business days following the service of this Order:

   a. Provide the Temporary Receiver with a full detailed accounting of all the assets of the Receivership Estate, including assets both inside and outside of the United States, and the location of all records of the Receivership Estate, that are held by each and every Defendant or Relief Defendant, for their benefit, or under their direct or indirect control, whether jointly or singly.

   b. Transfer to the territory of the United States and deliver to possession, custody, and control of the Temporary Receiver, all assets of the Receivership Estate (other than real property) and books and records of the Receivership Estate, located outside of the United States that are held by each and every Defendant and Relief Defendant, for their benefit, or under their direct or indirect control, whether jointly or singly.

   c. Provide the Temporary Receiver access to all records of the Receivership Estate and all assets of the Receivership Estate held by any financial or brokerage institution, business entity, or other person that receives actual notice of this Order by personal service or otherwise, located within or outside the territorial United States by signing any necessary consent forms.

31. Absent a valid assertion by Defendants or Relief Defendants of their respective rights against self-incrimination under the Fifth Amendment, Defendants and Relief Defendants shall, within twenty-four hours of the service of this order, cause to be prepare and

delivered to the Temporary Receiver, a detailed and complete schedule of all passwords and identification numbers (ID) for all websites, cloud storage services, email, and smartphone accounts, and all accounts at any bank, financial institution, or brokerage firm (including any introducing broker or futures commission merchant) controlled or operated by or to which any of the Defendants or Relief Defendants have access in connection with their business activities and business and personal finances.

32. Absent a valid assertion by Defendants or Relief Defendants of their respective rights against self-incrimination under the Fifth Amendment, Defendants and Relief Defendants shall, within twenty-four hours of the issuance of this Order, cause to be prepared and delivered to the Temporary Receiver, a detailed and complete schedule of all passwords to, and the location, make and model of, all computers and mobile electronic devices owned and/or used by Defendants and Relief Defendants in connection with their business activities and business and personal finances. The schedules required by this section shall include at a minimum the make, model and description of each, along with the location, the name of the person primarily assigned to use the computer and/or mobile device, and all passwords necessary to access and use the software contained on the computer and/or mobile device.

## VI.    Turning Over Assets and Records to the Temporary Receiver

33. Upon service of this Order, and absent a valid assertion by Defendants and Relief Defendants of their respective rights against self-incrimination under the Fifth Amendment, Defendants and Relief Defendants, and any other person or entity served with a copy of this Order, shall immediately or within such time as permitted by the Temporary Receiver in writing, deliver over to the Temporary Receiver:

a.  Possession and custody of all assets of the Receivership Estate, owned beneficially or otherwise, wherever situated;

b.  Possession and custody of all records of the Receivership Estate in connection with their business activities and business and personal finances, including but not limited to, all records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers); investor lists, title documents, and other records of the Receivership Defendants;

c.  Possession and custody of all assets belonging to members of the public now held by the Receivership Defendants;

d.  All keys, passwords, entry codes, and combinations to locks necessary to gain or to secure access to any of the assets or records of the Receivership Defendants related to their business activities and business and personal finances, including, but not limited to, access to the Receivership Defendants' business premises, means of communication, accounts, computer systems, mobile electronic devices, or other property; and,

e.  Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants.

## VII.    Directive to Cooperate with Temporary Receiver

34. Absent a valid assertion by Defendants or Relief Defendants of their respective rights against self-incrimination under the Fifth Amendment, Defendants, Relief Defendants, and all other persons or entities served with a copy of this order shall cooperate fully with and assist the Receiver.  This cooperation and assistance shall include, but not be limited

to, providing any information to the Receiver that the Receiver deems necessary to exercising the authority granted under this Order, providing any password required to access any computer or electronically-stored information in any medium, and advising all persons who owe money to Defendants or Relief Defendants that all debts should be paid directly to the Receiver.

**VIII. Stay on Actions Against the Receivership Defendants**

**IT IS FURTHER ORDERED THAT:**

35. Except by leave of the Court, during the pendency of the receivership ordered herein, Defendants, Relief Defendants, and all other persons and entities shall be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, the Temporary Receiver, assets of the Receivership Estate, or the Receivier's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

    a. Petitioning, or assisting in the filing of a petition, that would cause the Receivership Defendants to be placed in bankruptcy;

    b. Commencing, prosecuting, litigating or enforcing any suit or proceeding against any of the Receivership Defendants, or any of their subsidiaries or affiliates, except that such actions may be filed to toll any applicable statute of limitations;

    c. Commencing, prosecuting, continuing, or entering any suit or proceeding in the name or on behalf of any of the Receivership Defendants, or any of their subsidiaries or affiliates;

    d. Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of,

property of the Receivership Defendants, or any of their subsidiaries or affiliates, or any property claimed by any of them, or attempting to foreclose, forfeit, alter, or terminate any of the Receivership Defendants' interests in property, including without limitation, the establishment, granting, or perfection of any security interest, whether such acts are part of a judicial proceeding or otherwise;

e.   Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Receivership Defendants, or any of their subsidiaries or affiliates, or the Temporary Receiver, or any agent of the Temporary Receiver; and

f.   Doing any act or thing to interfere with the Temporary Receiver taking control, possession, or management of the property subject to the receivership, or to in any way interfere with the Temporary Receiver or to harass or interfere with the duties of the Temporary Receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over the property and assets of the Receivership Defendants, or their subsidiaries or affiliates.

Provided, however, that nothing in this section shall prohibit any federal or state law enforcement or regulatory authority from commencing or prosecuting an action against the Receivership Defendants.

## IX.   Compensation for Temporary Receiver and Personnel Hired by the Temporary Receiver

36. The Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver, are entitled to reasonable

compensation, to be paid solely from the assets of the Receivership estate, for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them for those services authorized by this Order that when rendered were (1) reasonably likely to benefit the receivership estate or (2) necessary to the administration of the estate. The Temporary Receiver and all personnel hired by the Temporary Receiver shall not be compensated or reimbursed by, or otherwise entitled to, any funds from the Court, the CFTC, or the State of Utah. The Temporary Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order and subsequent requests filed quarterly thereafter. The requests for compensation shall itemize the time and nature of services rendered by the Temporary Receiver and all personnel hired by the Temporary Receiver.

## X. Persons Bound by This Order

37. This Order is binding on any person who receives actual notice of this Order by personal service or otherwise and is acting in the capacity of an officer, agent, servant, employee, or attorney of Defendants or Relief Defendants, or is in active concert or participation with the Defendants or Relief Defendants.

## XI. Bond Not Required of Plaintiff or the Temporary Receiver

38. As Plaintiffs CFTC and the State of Utah have made a proper showing under 7 U.S.C. 13a-1(b) and Section 61-1-20 of the Securities Act, they are not required to post any bond in connection with this Order. The Temporary Receiver similarly is not required to post bond.

XII.   **Service of Order and Assistance of U.S. Marshals Service and/or Other Law Enforcement Personnel**

39. Copies of this Order may be served by any means, including via email or facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any records or assets of any Defendant or Relief Defendant, or that may be subject to any provision of this Order.

40. Staff of the CFTC's Division of Enforcement, including Thomas Simek, Jennifer Chapin, and Steven Turley, and staff of the State of Utah, including Thomas Melton, Robert Wing, Jennifer Korb, Paula Faerber, Elizabeth Blaylock, and David Hermansen, and representatives of the United States Marshals Service and the Federal Bureau of Investigation ("FBI") are specially appointed by the Court to effect service.

41. The United States Marshals Service and the FBI are authorized to: a) accompany and assist representatives of the CFTC and the State of Utah in the service and execution of the Summons, Complaint, and this Order on the Defendants and Relief Defendants, and b) help maintain lawful order while representatives of the CFTC and State of Utah inspect records as provided in this Order.[1]

XIII.   **Service on the CFTC and the State of Utah**

42. Defendants and Relief Defendants shall comply with all electronic filing rules and requirements of the U.S. District Court for the District of Utah and shall serve all pleadings, correspondence, notices required by this Order, and other materials on the CFTC by delivering a copy to Thomas Simek, Chief Trial Attorney, Division of Enforcement, Commodity Futures Trading Commission, Southwestern Region office –

---

[1] Nothing in this Order shall limit in any way any other lawful activities undertaken by the FBI with respect to Defendants or Relief Defendants in connection with any other proceeding.

4900 Main Street, Suite 500 Kansas City, Missouri 64112, by electronic filing, e-mail, personal delivery or courier service (such as Federal Express or United Parcel Service) and not by regular mail due to potential delay resulting from heightened security and decontamination procedures applicable to the CFTC's regular mail.

43. Defendants and Relief Defendants shall serve all pleadings, correspondence, notices required by this Order, and other materials on the State of Utah by delivering a copy to Robert Wing, Assistant Attorney General, 160 East 300 South, Fifth Floor, Salt Lake City, Utah 84114 by electronic filing, e-mail, personal delivery or courier service (such as Federal Express or United Parcel Service) and not by regular mail due to potential delay resulting from heightened security and decontamination procedures applicable to the State of Utah's regular mail.

## XIV.    Hearing on Preliminary Injunction and Expedited Discovery

44. Plaintiff's Motion for a preliminary injunction and extending the appointment of the Temporary Receiver is set for hearing on the _____ day of November, 2018, at _____ a.m. before the Honorable _____, Courtroom _____, at the United States Courthouse for the District of Utah, located at 351 S. West Temple, Salt Lake City, UT 84101.  Should any party wish to file a memorandum of law or other papers concerning the issuance of a preliminary injunction against Defendants and Relief Defendants, such materials shall be filed, served and received by all parties at least two days before the hearing ordered above.

45. Plaintiff's additional Motion for Expedited Discovery is granted and in advance of this preliminary injunction hearing, the parties may conduct expedited discovery, and the prohibition upon discovery before the early meeting of counsel pursuant to FRCP 26(f),

in accordance with FRCP 26(d), is removed. Depositions of parties and non-parties may be taken subject to two calendar days' notice pursuant to FRCP 30(a) and 45, that notice may be given personally, by facsimile, or by electronic mail, and, if necessary, any deposition may last more than seven hours.

**XV.     Force and Effect**

46. This Order shall remain in full force and effect until _____, unless extended further by order of this Court pursuant to Fed. R. Civ. P. 65(b)(2), and this Court retains jurisdiction of this matter for all purposes.

IT SO ORDERED, at Salt Lake City, Utah, on this _____ day of November, 2018, at _____ ___.m.

_____
Hon.
United States District Judge