Joseph M.R. Covey (7492) (jcovey@parrbrown.com)
Cynthia D. Love (14703) (clove@parrbrown.com)
Walter O. Peterson (17300) (wpeterson@parrbrown.com)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Receiver Jonathan O. Hafen*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>STATE OF UTAH DIVISION OF SECURITIES, through Attorney General Sean D. Reyes<br><br>    Plaintiffs,<br>      v.<br><br>RUST RARE COIN INC., a Utah corporation, and GAYLEN DEAN RUST, an individual, DENISE GUNDERSON RUST, an individual, JOSHUA DANIEL RUST, an individual,<br><br>    Defendants;<br><br>and<br><br>ALEESHA RUST FRANKLIN, an individual, R LEGACY RACING INC, a Utah corporation, R LEGACY ENTERTAINMENT LLC, a Utah limited liability company, and R LEGACY INVESTMENTS LLC, a Utah limited liability company.<br><br>    Relief Defendants. | **SIXTH INTERIM FEE APPLICATION**<br><br><br>Civil No. 2:18-cv-00892-TC<br><br>Judge Tena Campbell<br><br>Magistrate Judge Dustin Pead |

Jonathan O. Hafen, the Court-Appointed Receiver over the assets of the following Defendants and Relief Defendants: Rust Rare Coin Inc. ("RRC"), Gaylen Dean Rust, R Legacy Racing Inc., R Legacy Entertainment LLC, R Legacy Investments LLC, Gaylen Dean Rust, Denise Gunderson Rust, Joshua Daniel Rust, and Aleesha Rust Franklin (collectively, "Receivership Defendants"), hereby submits this sixth interim fee application (this "Fee Application"), seeking approval by the Court for the fees and expenses incurred by the Receiver; the Receiver's counsel, Parr Brown Gee & Loveless ("Parr Brown"); the Receiver's accountants, Berkeley Research Group ("BRG"); and the Conflict Receiver, Wayne Klein, and his counsel, Manning Curtis Bradshaw & Bednar, for the period of January 1, 2020 through March 31, 2020 (the "Application Period"). The Receiver seeks authorization to pay all allowed fees and expenses from the Receivership Estate once the Receiver has recovered an amount equal to three times the fees requested in this Fee Application and allowed in prior applications. In support hereof, the Receiver states as follows:

## I.     RELEVANT BACKGROUND

1.     On November 27, 2018, the Court entered an *Order Appointing Receiver and Staying Litigation* (the "Appointment Order"). *See* Dkt. No. 54. Accordingly, the Receiver has worked in concert with his counsel, Parr Brown, and his accountants, BRG, to identify, secure, and liquidate various Receivership assets, identify claimants and creditors of the Receivership Estate, and identify and initiate discussions with net winners to recover funds for the benefit of all Receivership claimants.

2.     The Receiver has filed his *Sixth Quarterly Status Report*, which includes a status

report for the period of January 1, 2020 through March 31, 2020 (the "Sixth Status Report").[1] The

Sixth Status Report provides a comprehensive description of the services performed by the

Receiver and his professionals during the Application Period and is incorporated herein by

reference.

## II.      REQUEST FOR COURT APPROVAL OF FEES AND EXPENSES

3.      The Appointment Order provides, in the relevant part:

57. Subject to Paragraph 59 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

58. The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates. The Receiver and Retained Personnel shall not be compensated or reimbursed by, or otherwise entitled to, any funds from the Court, the CFTC, or the State of Utah. Such compensation shall require the prior review by Plaintiffs and approval of the Court.

4.      Accordingly, the Receiver respectfully requests that the Court approve the fees and

expenses incurred by the Receiver, his team, and the Conflict Receiver and his counsel as set forth

below and in the attached Exhibits.

---

[1] Docket No. 301, filed April 30, 2020.

### III. FEES AND EXPENSES REQUESTED ARE ACTUAL, NECESSARY AND REASONABLE FOR THE SERVICES RENDERED

5. During this Application Period, the Receiver and his professionals have provided actual and necessary services for the Receivership Estate as summarized below and detailed in the Exhibits attached hereto. The Exhibits also detail the out-of-pocket expenses incurred by the professionals in rendering services to the Receivership Estate.

6. Parr Brown and BRG have submitted their invoices to the Receiver, and the Receiver has reviewed and approved the invoices.

7. This Fee Application complies with the billing instructions set forth in the Appointment Order. The Receiver submitted this Fee Application to the Utah Division of Securities and CFTC prior to filing it with the Court, and both have informed the Receiver that they have no objection to the payment of the fees and reimbursement of the expenses outlined herein.

8. The Receiver believes that the fees and expenses are reasonable. The Receiver also believes that the services rendered and the expenses advanced have been beneficial to the Receivership Estate.

9. Consistent with the Receiver's previous fee applications, the Receiver and his professionals have continued to write off time and delay payment to assure that the Receivership Estate will receive an amount at least three times in excess of any fees requested *before* the Receiver and his professionals are paid. In this Fee Application, the Receiver has voluntarily written off all time related to the preparation of any fee application and has otherwise made downward adjustments to fees and expenses as appropriate.

## IV.    SUMMARY OF AMOUNTS REQUESTED

10.    The total amounts requested for the Receiver, his professionals, the Conflict Receiver and his counsel in this Fee Application, including the relevant voluntary write downs, are summarized below:

a.    <u>Receiver</u>: From January 1, 2020 through March 31, 2020, the Receiver billed a total of 64.6 hours for services to the Receivership Estate. The Receiver is seeking approval for the payment of fees totaling $23,414.11 of which $23,256.00 is for fees and $158.11 is for out-of-pocket expenses. *See* Exhibit A.

b.    <u>Parr Brown</u>: From January 1, 2020 through March 31, 2020, Parr Brown billed a total of 2,114.2 hours for legal services to the Receivership Estate. Parr Brown is seeking approval for the payment of fees and expenses totaling $472,207.75 of which $462,588.50 is for fees and $9,619.25 is for out-of-pocket expenses. *See* Exhibit B. These amounts include a voluntary write down of $8,930.50.

c.    <u>BRG</u>: From January 1, 2020 through March 31, 2020, BRG billed a total of 1,106.3 hours providing forensic, tax, and general accounting services to the Receivership Estate. BRG is seeking approval for the payment of fees and expenses totaling $291,359.79, of which $291,171.00 is for fees and $188.79 is for out-of-pocket expenses. *See* Exhibit C. These amounts include a voluntary write down of $3,911.00.

d.    <u>Conflict Receiver and counsel</u>: From January 1, 2020 through March 31, 2020, Conflict Receiver, Wayne Klein, and his legal counsel billed a total of 30.4 hours for services to the Receivership Estate. The Conflict Receiver and his counsel are seeking approval for the payment of fees totaling $8,312.00. *See* Exhibit D. These amounts include a voluntary write down of $50.00.

11.     The amounts requested reflect a total of $12,891.50 in voluntary reductions by the respective professionals in an exercise of their billing judgment.

12.     The Receivership Estate has sufficient funds to pay all amounts requested. However, as set forth above, the Receiver and his professionals will not take any fees or be reimbursed for any expenses from the Receivership Estate until *after* the Receiver recovers at least three times the total amount of the fees requested in this and all previous fee applications.

## V.     SUMMARY OF EXHIBITS

13.     Professional services have been recorded contemporaneously with services being rendered and these services, as well as the expenses incurred, are detailed in the attached Exhibits described below.

14.     The Receiver, Parr Brown, BRG, the Conflict Receiver and his counsel have maintained their time in records organized according to tasks, with each task record being maintained in chronological order.

15.     The following Exhibits are attached hereto in support of this Fee Application:

### Exhibit A—Time Records of Receiver

**Exhibit A**                          **Summary by Task**

This section of Exhibit A breaks down the total fees assessed for each of the Receiver's tasks, which are discussed in more detail below.

**Exhibit A-1**                          **Administration of Receivership Estate**

This Application Period, the Receiver worked closely with his legal counsel to draft the distribution plan, which was submitted to the Court for approval. The Receiver also continued to communicate with the Attorney General's Office to ensure they remain updated about the status of the Receivership Estate and the ongoing claims analysis process and recovery efforts. In

addition, the Receiver reviewed certain tax and financial documents related to the administration of the Receivership Estate.

### Exhibit A-2                              Asset Analysis and Recovery

The Receiver worked closely with his legal counsel during this Application Period negotiating favorable settlement agreements with net winners. These settlement efforts involved extensive coordination with the Receiver's counsel and required the Receiver to review the supporting documentation and settlement agreements before their execution. The Receiver continued coordinating with investors and their counsel to substantiate the various metal transactions that were associated with such investors. The Receiver also continued to work with his legal counsel to recover the $1.6 million in funds that were transferred out of RRC's bank account shortly after the Receiver's appointment.

### Exhibit A-3                              Disposition of Assets

The Receiver oversaw and coordinated the negotiation and/or sale of various real property during the Application Period. These efforts included overseeing the closings on the Huge Studios property for $3,025,000 and the Main Street property in Homer, Alaska for $220,000. The Receiver also oversaw and approved the sale of the equipment located at Huge Studios. In addition, the Receiver worked with his legal counsel and industry experts to find potential buyers for the Musician's Toolkit assets and the timeshare membership with Wyndham by Worldmark.

### Exhibit A-4                              Claims Administration

The Receiver and his legal team continued their analysis of the claim forms submitted by potential Receivership claimants. By the end of the Application Period, the Receiver and his team have reviewed over 612 claim forms. As part of the review process, the Receiver has

coordinated with his attorneys and accountants to review and verify the claim amounts identified in these forms to determine whether each claim will be allowed or disallowed. At this time, the Receiver has reviewed all claims forms submitted by potential claimants. The Receiver's analysis is ongoing with respect to certain employee-related claims while the Receiver continues to collect employment records in order to verify such claims.

### Exhibit B—Time Records of Parr Brown

**Exhibit B**                                    **Summary by Task**

This section of Exhibit B breaks down the total fees assessed for each of Parr Brown's tasks, which are discussed in more detail below.

**Exhibit B-1**                          **Administration of Receivership Estate**

During this Application Period, Parr Brown continued to manage and keep secure the various real and personal property within the Receivership Estate. This involved drafting a lease amendment with the secured storage facility where the bullion items are stored and updating insurance policies to ensure that such assets remain properly protected. Having obtained Court approval to begin liquidating inventory held at RRC (*See* Dkt. No 294), Parr Brown successfully negotiated and entered into a favorable agreement with a numismatic expert who will oversee the liquidation of certain high value inventory items. Parr Brown continued posting motions and Court orders on the Receiver's website and also making updates to the Receiver's mailing matrix to ensure all interested parties receive information about the Receivership's progress.

**Exhibit B-2**                              **Asset Analysis & Recovery**

As previously reported, after analyzing the cash and metal transactions associated with Mr. Rust's silver pool, Parr Brown was able to identify potential net winners of the Receivership Estate. In order to preserve the Receiver's right to recover funds from net winners, Parr Brown

continued to work the 30 separate claw back actions filed against approximately 124 investors (the "Claw Back Defendants"). Parr Brown also continued working with the 170 potential net winners (the "Net Winners") with whom they executed tolling agreements in order to facilitate further discussion and negotiations regarding their transactions with the Receivership Defendants. As a result of the Court granting the Receiver's Motion for Settlement Authority (*See* Dkt. No. 271), Parr Brown worked diligently to communicate and meet with Claw Back Defendants, Net Winners and their counsel to secure favorable settlement agreements where possible. When settlement agreements has not been reached, Parr Brown has taken those actions necessary to prepare for, and are move numerous cases forward through the litigation process. Given the vast number of Claw Back Defendants and Net Winners, these recovery efforts have required a significant amount of analysis and review. As a result of this work, Parr Brown has successfully recovered approximately $419,800 in net proceeds during this Application Period.

In connection with the claims analysis and claw back recovery efforts, Parr Brown has begun compiling data which will be used to prepare expert reports. These reports will be critical in prosecuting potential claw back filings in the upcoming months.

Parr Brown also continued its efforts to recover the $1.6 million in funds that were transferred to a Zions' customer from RRC's bank accounts shortly after the Receiver was appointed. This Application Period, the Receiver attempted to informally resolve this case with opposing counsel but was unable to reach an agreement.

**Exhibit B-3**            **Disposition of Assets**

Last quarter, Parr Brown secured an offer to purchase Huge Studios which this Court reviewed and approved. *See* Dkt. No. 278. This Application Period, Parr Brown successfully closed on the sale of Huge Studios to an independent, third-party buyer for $3,025,000.  After

paying realtor fees and secured debt of $560,451, the sale of Huge Studios resulted in a net amount of over $2,200,000 to the Receivership Estate. Additionally, Parr Brown sold one of the Alaskan properties, a two-story business property located at 3657 Main Street, Homer, Alaska, to a third-party buyer for $220,000. As a result of the sale, approximately $205,000 was brought into the Receivership Estate.

Parr Brown has worked to liquidate the music and sound equipment that was being stored at Huge Studios. Parr Brown coordinated with the Receiver to retain the services of a sales agent, Michael Greene, to facilitate the sale of the remaining equipment. This Application Period, Mr. Greene recovered $101,704 in proceeds from the sale of such equipment which is in addition to the $156,674 of equipment previously sold. There remains a relatively small amount of equipment left to be sold. Although Mr. Greene continues his efforts to liquidate the remaining Huge Studios equipment, progress has recently slowed due to complications related to COVID-19.

This Application Period, Parr Brown received Court approval to begin liquidating the inventory that was held at RRC. *See* Dkt. No. 294. Accordingly, Parr Brown has retained the services of a numismatic expert and a local auction house to begin the liquidation process of the high and low-value inventory items. Parr Brown has also solicited bids from local and regional coin dealers to purchase the bullion items currently housed in a secured storage facility. It is anticipated that most of the RRC inventory will be sold during the next several months.

**Exhibit B-4                    Claims Administration**

As previously reported, Parr Brown arranged to have over 4,000 hardcopies of the Court-approved claim form sent out to all potential creditors of the Receivership Estate. In response to this process, Parr Brown has received over 612 claim forms from potential creditors. During this

Application Period, Parr Brown continued the process of reviewing and verifying the various claim forms submitted to the Receivership Estate. This involved ongoing correspondence with both the Receiver and his accountants at BRG. To date, Parr Brown has reviewed all claim forms submitted by potential claimants to determine whether such claims will be allowed. All claim forms submitted by investors, trade vendors and customers have been analyzed by comparing the asserted losses with data from the books and records of the Receivership Defendants. Parr Brown anticipates completing its analysis of the remaining employee-related claims next quarter.

This Application Period, Parr Brown worked with the Receiver to create a fair and equitable distribution plan, the first step towards making an initial interim disbursement to the creditors and claimants of the Receivership Estate. Parr Brown recently filed a motion with the Court seeking approval of such distribution plan. *See* Dkt. No. 298.

### Exhibit C—Time Records of BRG

This section breaks down the total fees assessed by BRG, which are discussed in more detail below.

#### Data/Documentation Preservation & Analysis

BRG has assisted the Receiver and his counsel with the review of documents received from various parties produced voluntarily or under subpoena in order to identify and reconcile the information and data. BRG has also coordinated with outside professionals in order to obtain access to the historical transaction and accounting information of RRC and its related entities.

#### Asset Identification, Preservation & Liquidation

BRG has assisted the Receiver and his counsel in analyzing the books and records of the Receivership Estate and providing financial information and analyses related to various RRC entities and interests. The information and analyses provided by BRG is important to assisting

the Receiver in identifying assets and in negotiating with third parties. BRG has also assisted the

Receiver in connection with due diligence requests of potential buyers of receivership assets, as

well as settlement discussions with third parties.

### Claims Process

BRG has continued to assist the Receiver and his counsel in developing an efficient and

effective claims process, including the claims motion filed with the Court, notification to

potential claimants, as well as the recording, tracking and reconciliation of filed claims.

### Cash Receipt and Disbursement Analysis

RRC and its related entities historically have used QuickBooks as their accounting

software. However, during the mid to late part of 2018, RRC, as well as R Legacy

Entertainment, transitioned to a new accounting platform known as Acumatica. Acumatica is a

web-based accounting software program. BRG has reviewed and extracted general ledger

activity from both QuickBooks and Acumatica for RRC and its related entities. The data

extracted to date consists of nearly 400,000 transactions spanning from 2002 through 2018. From

this data, BRG has identified nearly 110,000 cash related transactions from which it has created a

cash receipt and disbursement database.

BRG has continued the process of categorizing the cash transactions by transaction type

(i.e. investor contributions, disbursements to investors, purchases, sales, operating expenses,

etc.). Additionally, BRG has continued to identify and add relevant information in order to

provide the Receiver with an accurate picture of potential investor and creditor claims and

potential claims to pursue.

Furthermore, in order to provide a complete picture of the Receivership Defendants'

financial records, the data has been compared, validated and in some instances supplemented by

information obtained from various financial institutions.

### Net Winner/Claims Analysis

BRG has continued to perform extensive analysis of cash receipt and disbursement activity, transaction support, investor files, email communications, and information received from individual investors through questionnaire responses and claim filings. This information has allowed BRG to identify and determine the amount of funds invested and draws taken by each individual investor and investor group. One of the complicating factors in this analysis is the quantity of transactions that are "non-cash" in nature. In its analysis, BRG has identified many non-cash transactions that occurred between RRC and investors that involve investments and draws using physical metals, which are then converted and credited to the investor's account. This information is not captured in the cash receipt and disbursement activity and is only identified through additional supporting documentation such as RRC receipts, email communications, investor statements, and investor files.

An additional issue encountered in this process is the commingled nature of the investments and how they were recorded in RRC's records. Investors were typically combined into investor groups with their investments being pooled together. Sometimes investors were given their own investment account within the group and sometimes they were simply added to another previously existing investment account. BRG has identified many instances in which an investor would pay their investments to a group leader who would then deposit the investment under his or her own name rather than the name of the actual investor.

Due to the nature of these transactions and the various sources that must be analyzed to provide the Receiver with an accurate picture and summary of each investor's activity, this analysis has proven to be much more complicated and time consuming to complete.

Notwithstanding the difficulties noted above, BRG's analysis has been critical in assisting the Receiver to identify potential claw backs and potential claims by investors. BRG has developed and provided these analyses to the Receiver and his counsel to be used in discussions, negotiations and potential recoveries. BRG has also been involved in assisting the Receiver and his counsel with responding to document requests from investors and their counsel. Additionally, BRG has assisted the Receiver in communications, including attending various meetings, with investors and their counsel to obtain additional information and support regarding their investments. Furthermore, BRG has coordinated various meetings and discussions with Gaylen Rust to obtain clarification and additional insight on investor account activity.

### Ponzi Analysis

BRG has continued to assist the Receiver in analyzing and evaluating various aspects of the alleged Rust Ponzi scheme, including the duration, size, and various identifying factors consistent with Ponzi activity in an effort to seek a "Ponzi" presumption from the Court. The work performed has included, but is not limited to, detailed investigation and analysis of RRC's bank account activity, various "Point-of-Sale" systems and data, QuickBooks accounting records, tax returns and accountant work papers, discussions with RRC employees, sales and purchase orders, investor statements, RRC receipts, investor questionnaires, filed claims, and the company's email, electronic files, and hardcopy of existing documentation. The analysis is ongoing given the volume of data and information being analyzed.

### Tax Compliance, Analysis & Preparation

BRG has worked closely with the Receiver and other professionals in order to secure information, including asset valuation information, needed in order to prepare final income tax returns for RRC and related entities under the Receiver's control.  BRG has met with the

Receiver and other professionals on multiple occasions to inform the Receiver of specific tax issues which arise in a Ponzi scheme case, as well as tax compliance requirements that must be adhered to in a Receivership.

BRG has read and analyzed correspondence received from federal and state taxing authorities. BRG has responded, as appropriate, to tax correspondence. BRG met with and corresponded with the Receiver and various other professionals regarding resolution of outstanding tax issues.  BRG performed tax research related to various income tax and other tax issues that arose after the appointment of the Receiver.

BRG analyzed 2019 financial transactions for the Rust Rare Receivership and the pre-receivership entities in order to identify transactions requiring the preparation of required Form(s) 1099 and 1096. BRG prepared the required information returns. Additionally, BRG analyzed 2018 financial information and prepared past due 2018 Tennessee state income tax returns for Writer's Den and Torque Entertainment. The completed income tax and information returns were reviewed in order to ensure completeness and accuracy. Corrections and updates were made as was necessary. BRG caused the finalized income tax returns to be filed with the proper taxing authorities. BRG also prepared outstanding payroll and sales tax returns for various pre-receivership entities as was required.

### Exhibit D—Time Records of Conflict Receiver and His Counsel

This section breaks down the total fees assessed by the Conflict Receiver and his counsel, which are discussed in more detail below.

This Application Period, the Conflict Receiver and his counsel continued their correspondence and review of documentation related to various claw back defendants. The

Conflict Receiver continues to work towards a resolution of these recovery matters and correspond with investors and their legal counsel regarding the same.

## VI.    PRIOR REQUESTS AND INTERIM NATURE OF REQUEST

16.    The Receiver has previously filed five interim fee applications,[2] all of which were approved by the Court. *See* Dkt. Nos. 153, 203, 247, 275, 293.

17.    This is the Sixth Interim Fee Application of the Receiver and his professionals.

18.    The Receiver and his professionals understand that the authorization and payment of fees and expenses is interim in nature. All fees and expenses allowed on an interim basis will be subject to final review at the close of the case and the discharge of the Receiver when the Receiver files a final accounting and the Receiver and his professional's file final fee applications.

19.    For the reasons set forth above and as supported by the Exhibits attached hereto, the Receiver respectfully submits that the fees and expenses requested herein are for actual services that were necessary for and beneficial to the administration of the Receivership Estate. The Receiver has made every attempt to limit the administrative expenses of this Receivership Estate, and the Receiver submits that given the work that has been performed as reflected in the attached time entries, the fees and expenses that have been incurred are reasonable.

20.    Pursuant to Paragraph 62 of the Appointment Order, *see* Dkt. No. 54, the Receiver represents and avers that this Fee Application complies with the terms of the billing instructions agreed to by the Receiver, the fees and expenses included therein were incurred in the best interests of the Receivership Estate, and the Receiver has not entered into any agreement, written or oral,

---

[2] The Receiver's First Interim Fee Application was filed on February 22, 2019. *See* Dkt. No. 120. The Receiver's Second Interim Fee Application was filed on May 24, 2019. *See* Dkt. No. 187. The Receiver's Third Interim Fee Application was filed on September 4, 2019. *See* Dkt. No. 241. The Receiver's Fourth Interim Fee Application was filed on December 31, 2019. *See* Dkt. No. 274. The Receiver's Fifth Interim Fee Application was filed on March 10, 2020. *See* Dkt. No. 292.

express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

21.     The Receiver respectfully requests that the Court enter an Order (i) approving, on an interim basis, the Receiver's fees in the amount of $23,256 and out-of-pocket expenses of $158.11; Parr Brown's fees in the amount of $462,588.50 and out-of-pocket expenses of $9,619.25; BRG's fees in the amount of $291,171 and out-of-pocket expenses of $188.79; and the Conflict Receiver and his counsel's fees in the amount of $8,312; and (ii) authorizing the Receiver to pay these fees and reimburse the expenses from the Receivership Estate once the Receiver has recovered for the Estate at least three times the amount of fees requested in this Fee Application and prior applications.

22.     A proposed Order is attached hereto as Exhibit E.

The Receiver, Parr Brown, BRG, and the Conflict Receiver and his counsel verify under penalty of perjury that the foregoing is true and correct.

DATED this 7th day of August, 2020.

**RECEIVER**

_____
Jonathan O. Hafen, Receiver

**PARR BROWN GEE & LOVELESS, P.C.**

_____
Joseph M.R. Covey
Cynthia D. Love
*Attorneys for Receiver Jonathan O. Hafen*

**BERKELEY RESEARCH GROUP**

_____
Ray Strong

**CONFLICT RECEIVER**

_____
Wayne Klein, Conflict Receiver

**MANNING CURTIS BRADSHAW & BEDNAR**

_____
David. C. Castleberry
*Attorney for Conflict Receiver Wayne Klein*

DATED this 4th day of August, 2020.

**RECEIVER**

_____

Jonathan O. Hafen, Receiver

**PARR BROWN GEE & LOVELESS, P.C.**

_____

Joseph M.R. Covey
Cynthia D. Love
*Attorneys for Receiver Jonathan O. Hafen*

**BERKELEY RESEARCH GROUP**

_____

Ray Strong

**CONFLICT RECEIVER**

_____

Wayne Klein, Conflict Receiver

**MANNING CURTIS BRADSHAW & BEDNAR**

_____

David. C. Castleberry
*Attorney for Conflict Receiver Wayne Klein*

18

DATED this 4th day of August, 2020.

**RECEIVER**

_____

Jonathan O. Hafen, Receiver

**PARR BROWN GEE & LOVELESS, P.C.**

_____

Joseph M.R. Covey
Cynthia D. Love
*Attorneys for Receiver Jonathan O. Hafen*

**BERKELEY RESEARCH GROUP**

_____

Ray Strong

**CONFLICT RECEIVER**

_____

Wayne Klein, Conflict Receiver

**MANNING CURTIS BRADSHAW & BEDNAR**

_____

David. C. Castleberry
*Attorney for Conflict Receiver Wayne Klein*

DATED this 4th day of August, 2020.

**RECEIVER**

_____
Jonathan O. Hafen, Receiver

**PARR BROWN GEE & LOVELESS, P.C.**

_____
Joseph M.R. Covey
Cynthia D. Love
_Attorneys for Receiver Jonathan O. Hafen_

**BERKELEY RESEARCH GROUP**

_____
Ray Strong

**CONFLICT RECEIVER**

_____
Wayne Klein, Conflict Receiver

**MANNING CURTIS BRADSHAW & BEDNAR**

_____
David. C. Castleberry
_Attorney for Conflict Receiver Wayne Klein_

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the above **SIXTH INTERIM FEE APPLICATION** was (1) electronically filed with the Clerk of the Court through the CM/ECF system on August 7, 2020, which sent notice of the electronic filing to all counsel of record, (2) posted on the Receiver's website (rustrarecoinreceiver.com), and (3) emailed to all those on the Receiver's master mailing matrix.

| | |
|---|---|
| Kristen R. Angelos<br>UTAH FEDERAL DEFENDER OFFICE<br>46 W BROADWAY STE 110<br>SALT LAKE CITY, UT 84101<br>(801)524-4010<br>kris_angelos@fd.org | Walter F. Bugden<br>BUGDEN & ISAACSON LLC<br>445 E 200 S STE 150<br>SALT LAKE CITY, UT 84111<br>(801)467-1700<br>wally@bilaw.net |
| Jennifer Juniper Chapin<br>COMMODITY FUTURES TRADING<br>COMMISSION<br>4900 MAIN ST STE 500<br>KANSAS CITY, MO 64112<br>(816)960-7746<br>jchapin@cftc.gov | P. Matthew Cox<br>SNOW CHRISTENSEN & MARTINEAU<br>10 EXCHANGE PLACE 11TH FL<br>PO BOX 45000<br>SALT LAKE CITY, UT 84145-5000<br>(801)521-9000<br>pmc@scmlaw.com |
| Andrew G. Deiss<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)433-0226<br>adeiss@deisslaw.com | Sean N. Egan<br>SOUTH TEMPLE TOWER STE 1505<br>136 E SOUTH TEMPLE<br>SALT LAKE CITY, UT 84111-1139<br>(801)363-5181<br>(801)363-5184 (fax)<br>seannegan@sneganlaw.com |
| Paula Woodland Faerber<br>UTAH ATTORNEY GENERALS OFFICE<br>160 E 300 S 5TH FLOOR<br>SALT LAKE CITY, UT 84114<br>(801)366-0248<br>pfaerber@agutah.gov | Jacob L. Fonnesbeck<br>SMITH WASHBURN LLP<br>8 E BROADWAY STE 320<br>SALT LAKE CITY, UT 84111<br>(801)584-1800<br>jfonnesbeck@smithwashburn.com |
| Robert K. Hunt<br>UTAH FEDERAL DEFENDER OFFICE<br>46 W BROADWAY SUITE 110<br>SALT LAKE CITY, UTAH 84101<br>(801)524-4010<br>robert_hunt@fd.org | Jennifer R. Korb<br>UTAH ATTORNEY GENERAL'S OFFICE<br>160 E 300 S 5TH FL<br>SALT LAKE CITY, UT 84114<br>(801)366-0310<br>jkorb@agutah.gov |

| | |
|---|---|
| Thomas M. Melton<br>UTAH ATTORNEY GENERAL'S OFFICE<br>160 E 300 S STE 500<br>SALT LAKE CITY, UT 84111<br>(801)366-0320<br>tmelton@agutah.gov | Corey Drew Riley<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)433-0226<br>criley@deisslaw.com |
| John Robinson, Jr.<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)433-0226<br>jrobinson@deisslaw.com | Thomas L. Simek<br>COMMODITY FUTURES TRADING<br>COMMISSION<br>4900 MAIN ST STE 500<br>KANSAS CITY, MO 64112<br>(816)960-7760<br>tsimek@cftc.gov |
| Jessica Stengel<br>46 W BROADWAY STE 110<br>SALT LAKE CITY, UT 84101<br>(801)524-4010<br>jessica_stengel@fd.org | Richard A. Van Wagoner<br>SNOW CHRISTENSEN & MARTINEAU<br>10 EXCHANGE PLACE 11TH FL<br>PO BOX 45000<br>SALT LAKE CITY, UT 84145-5000<br>(801)521-9000<br>rvanwagoner@scmlaw.com |
| D. Loren Washburn<br>SMITH WASHBURN LLP<br>8 E BROADWAY STE 320<br>SALT LAKE CITY, UT 84111<br>(801)584-1800<br>lwashburn@smithwashburn.com | Steven T. Waterman<br>DORSEY & WHITNEY LLP<br>111 S MAIN ST 21ST FL<br>SALT LAKE CITY, UT 84111-2176<br>(801)933-7360<br>waterman.steven@dorsey.com |
| Brenda E. Weinberg<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)933-226<br>bweinberg@deisslaw.com | Robert G. Wing<br>UTAH ATTORNEY GENERAL'S OFFICE<br>(160-5-140872)<br>160 E 300 S 5TH FLOOR<br>PO BOX 140872<br>SALT LAKE CITY, UT 84114-0872<br>(801)599-6891<br>rwing@agutah.gov |

/s/ *Joseph M.R. Covey*
Joseph M.R. Covey