**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>STATE OF UTAH DIVISION OF SECURITIES, through Attorney General Sean D. Reyes,<br><br>     Plaintiffs,<br>      v.<br><br>RUST RARE COIN INC., a Utah corporation, and GAYLEN DEAN RUST, an individual, DENISE GUNDERSON RUST, an individual, JOSHUA DANIEL RUST, an individual,<br><br>     Defendants;<br><br>and<br><br>ALEESHA RUST FRANKLIN, an individual, R LEGACY RACING INC, a Utah corporation, R LEGACY ENTERTAINMENT LLC, a Utah limited liability company, and R LEGACY INVESTSMENTS LLC, a Utah limited liability company.<br><br>     Relief Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br><br>Case No. 2:18-cv-00892<br><br>Judge Tena Campbell<br><br>Magistrate Judge Dustin B. Pead |

Wayne Klein, the Defendants' court-appointed Conflicts Receiver (the Conflicts Receiver), moves the court for an order to show cause why Zions Bancorporation, N.A. (Zions Bank) should not be held in civil contempt. For the reasons set forth below, the court finds that Zions Bank has acted in civil contempt by failing to comply with this court's Order and Memorandum Decision Granting Turnover Motion (the Turnover Order). (ECF No. 320). Accordingly, the Conflicts Receiver's motion (ECF No. 379) is GRANTED.

**BACKGROUND**

On November 15, 2018 at 12:44 p.m., the Leland S. Jacobson Trust (the Trust) completed a wire transfer of $1.6 million to the Rust Rare Coin (RRC) bank account at Zions Bank. (Turnover Order at 2.) At 2:50 pm that same day, this court froze all of RRC's assets—including its Zions Bank accounts—after considering allegations that RRC had been illicitly operating a large Ponzi scheme. (Id.; see also ECF No. 22.) Because of the court-ordered asset freeze, the $1.6 million was redirected to a Zions Bank "suspense account." (Id.)

The following day, November 16, 2018, Mr. Jacobson contacted Zions Bank about the wire transfer. He explained that he had just learned of the alleged Ponzi scheme operated by RRC and asked for the return of the $1.6 million. Zions Bank transferred the $1.6 million from the suspense account back to the Trust account. (Id.)

On November 27, 2018, the court entered an order appointing Jonathan Hafen as Receiver and Wayne Klein as Conflicts Receiver. (ECF No. 54). Shortly after Zions Bank received this order, it placed an internal freeze on the $1.6 million in the Trust account because of the Receiver's and the Trust's conflicting claims to the money. (Zions Bank Obj. ¶ 5 (ECF No. 388).)

On February 12, 2019, Zions Bank intervened in the Receivership action and filed an interpleader motion asking the court to determine who was entitled to the $1.6 million. (ECF No. 112; ECF No. 141). Zions Bank served its interpleader motion on the Trust and the Receiver. The Receiver subsequently filed a Motion for Turnover of $1.6 Million Interpled Into the Court by Zions Bank on July 16, 2019, requesting that Zions Bank deposit the funds into RRC's account. (ECF No. 227).

The court established a summary disposition procedure to resolve the dispute. After

discovery was completed, the Trust filed an objection to the Conflicts Receiver's Motion for

Turnover (ECF No. 310) and the Conflicts Receiver replied (ECF No. 309).

Following a hearing on June 16, 2020, the court issued the Turnover Order on June 25,

2020 (ECF No. 320). The court found that the $1.6 million became property of RRC at 12:44

p.m. on November 15, 2018, and was subject to the asset freeze order. The court ordered Zions

Bank to transfer the $1.6 million from the Trust account to the Receiver.

Meanwhile, the account freeze placed by Zions Bank on the $1.6 million in the Trust

account expired in early December 2019. According to Zions Bank, the expiration of account

freeze went unnoticed because "the in-house counsel of Zions Bank (who established the account

freeze) was no longer with [Zions Bank]." (Zions Bank Obj. ¶ 16.) Mr. Jacobson apparently

realized that he had the ability to withdraw the $1.6 million from the account. On December 11,

2019, at two separate branches, Mr. Jacobson completed nine withdrawals from the account. He

drained all of the funds except $1,700.00.

Neither Mr. Jacobson, the Trust, nor their counsel ever informed the court, the Conflicts

Receiver, or Zions Bank that the $1.6 million had been withdrawn from the Trust account.

During the hearing on June 16, 2020 neither counsel nor Mr. Jacobson told the court that Mr.

Jacobson had already withdrawn the $1.6 million.

Shortly after the court issued the Turnover Order, the Conflicts Receiver sent instructions

to Zions Bank for the transfer of the $1.6 million from the Trust account to the Conflicts

Receiver. When Zions Bank began its internal process to transfer the $1.6 million, it learned for

the first time that the $1.6 million was no longer in the Trust account.

## ANALYSIS

"A district court may exercise broad discretion in using its contempt power to assure

compliance with its orders." Rodriguez v. IBP, Inc., 243 F.3d 1221, 1231 (10th Cir. 2001). As

the moving party, the Conflicts Receiver has the initial burden of proving by clear and

convincing evidence that a valid court order existed, that Zions Bank had knowledge of the

order, and that Zions Bank disobeyed the order. ClearOne Commc'ns, Inc. v. Bowers, 651 F.3d

1200, 1210 (10th Cir. 2011) (quoting United States v. Ford, 514 F.3d 1047, 1051 (10th Cir.

2008)). If the Conflicts Received makes that showing, the burden shifts to Zions Bank to show

that it either complied or could not comply with the order. Id.

      The parties do not dispute that the Turnover Order was valid and that Zions Bank had

knowledge of it. (See Mot. at 4; Zions Bank Obj. at 7.) But they disagree about whether Zions

Bank disobeyed the order. The Conflicts Receiver states that "[t]he Turnover Order's mandate to

Zions Bank is simple: transfer $1.6 million to the RRC account controlled by the Receiver. Since

the June 25, 2020 issuance of the Turnover Order, Zions Bank has transferred none of the funds

to the Receiver." (Mot. at 4.) Zions Bank maintains that the Conflicts Receiver has not met his

burden because his motion "fails to properly describe and identify the provision of the Turnover

Order that applies to Zions Bank, and intentionally omits the fact that the Receiver and Conflicts

Receiver are well aware that there are not sufficient funds in the trust account to complete the

transfer." (Zions Bank Obj. at 8.)

      Zions Bank's argument is unpersuasive. The language of the Turnover Order is

sufficiently clear that Zions Bank was required to transfer the $1.6 million. Zions Bank never

did. Accordingly, Zions Bank has disobeyed the Turnover Order.

      Zions Bank also raises a present impossibility defense: it maintains that it was and still is

unable to comply with the Turnover Order. To prevail on an impossibility defense, the

contemnor must establish that he or she has made all reasonable and good faith efforts to comply

with the order. In re Aramark Sports & Ent. Servs., LLC, 725 F. Supp. 2d 1309, 1316 (D. Utah 2010); see also Bauchman By & Through Bauchman v. W. High Sch., 906 F. Supp. 1483, 1494 (D. Utah 1995).

According to Zions Bank, the funds cannot be transferred from the Trust account because they are not there. Zions Bank says it has made diligent, good faith efforts to comply with the Turnover Order, including informing the Conflicts Receiver that the funds were gone and demanding return of the funds from Mr. Jacobson. Zions Bank has also proffered the funds that were remaining in the Trust Account—$1,700—to the Conflicts Receiver. Zions Bank has also asked the Conflicts Receiver to assist with its efforts to recover the funds.

But Zions Bank made a series of significant errors in its custodianship of the $1.6 million, demonstrating that it has not taken all reasonable steps to comply with the Turnover Order. When Zions Bank originally filed its interpleader motion on March 13, 2019, it requested to "act as the custodian of the [] funds and continue to hold the funds pending this Court's order as to entitlement thereto" and to "maintain the [] funds in their current status in an interest-bearing account until the Receiver's and Trustee's claims to the funds are fully adjudicated." (ECF No. 141). Rather than interplead them into the court registry, Zions Bank specifically asked to keep possession of the funds. Moreover, Zions Bank chose not to freeze the funds in its internal suspense account but rather decided to transfer them back to the Trust account. Then Zions Bank negligently let the account freeze expire and allowed for more than six months to pass without realizing that most of the money had been withdrawn. Zions Bank also failed to check the Trust account before this court's hearing on the Conflict Receiver's Motion for Turnover on June 16, 2020.

Although most of Zions Bank's mistakes occurred before the court issued its Turnover

Order, Zions Bank was well-aware that there were competing claims to the funds when it failed

to securely maintain them. It was Zions Bank who requested and became the custodian of the

funds, and it was Zions Bank's own errors that led to the present situation.

Several Circuits have adopted the rule that a contemnor cannot assert an impossibility or

"present inability to comply" defense to civil contempt if the contemnor was responsible for the

impossibility or inability to pay. See Elec. Workers Pension Tr. Fund of Loc. Union |58, IBEW

v. Gary's Elec. Serv. Co., 340 F.3d 373, 383 (6th Cir. 2003); Chicago Truck Drivers v. Bhd. Lab.

Leasing, 207 F.3d 500, 506 (8th Cir. 2000); Pesaplastic, C.A. v. Cincinnati Milacron Co., 799

F.2d 1510, 1522  (11th Cir.1986). Though the Tenth Circuit has not expressly adopted this rule,

the court is nonetheless persuaded that Zions Bank's creation of its own impossibility illustrates

that it did not make "all reasonable efforts" to comply with the Turnover Order. See In re

Aramark, 725 F.Supp.2d at 1316 (citing Commodity Futures Trading Comm'n v. Wellington

Precious Metals, Inc., 950 F.2d 1525, 1529 (11th Cir. 1992) ("Even if the efforts [the

respondent] did make were substantial, diligent or in good faith, the fact that he did not make all

reasonable efforts establishes that [respondent] did not sufficiently rebut the prima facie showing

of contempt") (internal quotations omitted).)

Zions Bank tries to place all of the blame on Mr. Jacobson for withdrawing the funds

without telling the bank or the court. But the court cannot hold Mr. Jacobson or the Trust in

contempt in this action because, quite simply, there is no valid court order that applies to Mr.

Jacobson or the Trust. The Turnover Order only ordered that Zions Bank transfer the $1.6

million from the Trust account to the RRC account. In fact, the court stated that Mr. Jacobson

would be considered a RRC investor and that he "may file a claim with the Receiver for the

return of his investment, and will be entitled to recover a portion of that investment on the same

6

terms and through the same procedure as all other RRC investors." (Turnover Order at 14.)

## CONCLUSION

For the reasons described, the Conflict Receiver's motion for order to show cause why Zions Bank should not be held in civil contempt (ECF No. 379) is GRANTED. Zions Bank is in civil contempt. Zions Bank must transfer $1.6 million to the Receiver, plus attorney's fees and costs. Attorney's fees and costs will be awarded upon receipt of an affidavit from the Conflicts Receiver.

Dated this 13th day of April, 2021.

BY THE COURT:

_Tena Campbell_

JUDGE TENA CAMPBELL

U.S. District Court Judge