Joseph M.R. Covey (7492) (jcovey@parrbrown.com)
Cynthia D. Love (14703) (clove@parrbrown.com)
Walter O. Peterson (17300) (wpeterson@parrbrown.com)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Jonathan O. Hafen as Receiver*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>STATE OF UTAH DIVISION OF SECURITIES, through Attorney General Sean D. Reyes<br><br>    Plaintiffs,<br>      v.<br><br>RUST RARE COIN INC., a Utah corporation, and GAYLEN DEAN RUST, an individual, DENISE GUNDERSON RUST, an individual, JOSHUA DANIEL RUST, an individual,<br><br>    Defendants;<br><br>and<br><br>ALEESHA RUST FRANKLIN, an individual, R LEGACY RACING INC., a Utah corporation, R LEGACY ENTERTAINMENT LLC, a Utah limited liability company, and R LEGACY INVESTMENTS LLC, a Utah limited liability company.<br><br>    Relief Defendants. | **RECEIVER'S TWELFTH QUARTERLY STATUS REPORT**<br><br>*For the period July 1, 2021 to September 30, 2021*<br><br><br>Civil No. 2:18-cv-00892-TC<br><br>Honorable Tena Campbell<br><br>Magistrate Judge Dustin Pead |

Jonathan O. Hafen, the Court-Appointed Receiver for the assets of Rust Rare Coin Inc., Gaylen Dean Rust, Denise Gunderson Rust, Joshua Rust, Aleesha Rust Franklin, R Legacy Racing Inc., R Legacy Entertainment LLC, and R Legacy Investments LLC (collectively, "Receivership Defendants"), hereby submits this Twelfth Quarterly Status Report for the period of July 1, 2021 through September 30, 2021, pursuant to Section XIII, paragraph 53 of this Court's Order Appointing Receiver and Staying Litigation, dated November 27, 2018 (the "Appointment Order"). *See* Dkt. No. 54.

As instructed by the Court, this Report addresses:

I. A summary of the operations of the Receiver, including significant developments during the quarter.

II. A summary of the current financial condition of the Receivership.

III. A summary of the receipts and disbursements of the Receivership.

IV. A description of known Receivership property, including approximate valuations and anticipated dispositions.

V. A description of liquidated and unliquidated claims of the Receivership, including the need for forensic and investigatory resources, approximate values of those claims, and anticipated methods of enforcing such claims.

VI. A list of known creditors of the Receivership.

VII. The status of creditor claims proceedings.

VIII. The Receiver's recommendations for continuation of the Receivership.

I. **SUMMARY OF OPERATIONS OF THE RECEIVER, INCLUDING SIGNIFICANT DEVELOPMENTS DURING THE QUARTER**

A. **General Developments**

1. **Claims Analysis.** This quarter, the Receiver and his team continued to make progress on their review, analysis, and verification of the claim forms submitted by potential claimants of the Receivership Estate. At the end of the quarter, there have been approximately

623 claim forms submitted to the Estate, and the total amount of self-reported losses identified by such claimants is approximately $171 million. The Receiver and his team continue to diligently analyze the submitted claims and have coordinated with the Court to ensure that the review process is both thorough and efficient. The Receiver and his team review each claim to determine the accuracy of the dollar amount asserted, as well as the basis and priority of the claim. At this time, the Receiver and his team have reviewed all claim forms submitted by potential claimants, including investors. The Receiver is in the process of preparing a claims registry which should be completed sometime next quarter.

    2.      **Claw Back Actions.** As previously reported, **t**he Receiver and his team filed 30 separate claw back actions against approximately 124 different investors to ensure that the Receiver preserved his right to recover proceeds from potential net winners after the November 15, 2019 filing deadline. In addition, the Receiver made a significant effort to minimize the number of filings by coordinating the execution of over 170 tolling agreements with various potential net winners. As discussed in more detail below,[1] the Receiver continues to work closely with investors and their counsel to secure a favorable resolution of such actions.

  **B.  Liquidation of Real Property**

    1.      **Layton Property**.  As previously reported, the Receiver entered into a settlement agreement with Denise Rust under which the Receiver took title to the home that she and her former husband lived in, along with the adjoining property and certain water shares. *See Dkt. No*. 387.  Although the Receiver's real estate broker listed and marketed the property for sale for $1,950,000, the due diligence process revealed several issues with the property which hindered its resale value.  Accordingly, the offers received to purchase the property were below the asking

---

[1] *See* Section V.

price. This quarter, a hearing was held during which counsel for the Receiver presented to the Court the efforts the Receiver has made to sell the Layton property and ensuring that all statutory requirements were met. Following the hearing, the Court approved the sale of the property for $1,600,000 which was subsequently closed on September 30, 2021. *See Dkt. No*. 423.  The real property and water shares were encumbered by a few liens related to an investor/creditor/lender named Bary Jones.  The property was sold free and clean of such liens, with those liens attaching to the sale proceeds in the same amount, priority, and subject to the same defenses as existed before the sale.  The Receiver is working to resolve those lien issues.

    2.    **Timeshare Membership.** Gaylen and Denise Rust own a timeshare membership with Wyndham by WorldMark that the Receiver is currently in the process of attempting to liquidate, which has been difficult due to restrictions on the sale of the asset and unpaid balances. The Receiver continues in his efforts to determine the most effective way to liquidate this interest. Any proposed sale of this interest will be subject to Court approval.

  **C.**    **Liquidation of Personal Property.**  The only personal property liquidated this quarter was the water shares related to the Layton real property.

**D.  Recovery and Sale of Other Receivership Property**

    1.    **Intellectual Property.** The Receiver continues to analyze the feasibility and cost effectiveness of a sale of the Huge Studios, Torque Entertainment, and YourLDSMusicStore intellectual property. The Receiver anticipates that the sale and/or auction of these intangible assets will likely require significant analysis and cost to the Estate given the interrelated nature of Huge Studios, Torque Entertainment, Writer's Den, and YourLDSMusicStore.  The Receiver has had difficulty finding a buyer who is willing to pay an amount sufficient to justify the cost of analyzing the assets.

2.    **Investor Communications.**  The Receiver continues to post updates to the Receivership's website (rustrarecoinreceiver.com) when filings are made with the Court. The Receiver has also distributed by email copies of all filings and notices to the approximately 800 individuals listed on the Receiver's master mailing matrix. The Receiver also continues to communicate with investors about objections and proposed actions. The Receiver has also filed all objections on behalf of investors, when required by the Courts Summary Disposition Procedures.

3.    **Tax Issues.** The Receiver continues to work with his accountants at Berkley Research Group ("BRG") to ensure the Receivership's various tax obligations are being met, including the amounts owed in relation to the Receivership's property and the amounts associated with the business entities still within the scope of the Receivership Estate.

4.    **Discovery Productions and Redaction.** The Receiver has reviewed and produced a vast packet of documents including financial statements and investor communications to the Court and in several claw back actions. Currently, over 300,000 documents have been reviewed for production. In addition to the substantial amount of time reviewing thousands of documents for production to the Court and opposing parties, the Receiver has also completed a large-scale redaction of documents. In an effort both to ensure the privacy of hundreds of victims and minor children, while still respecting the rights of pro se litigants, the Receiver has created a set of redacted documents for production to pro se litigants. These documents have been redacted for social security numbers, birth dates and account numbers of investors.

II.   **SUMMARY OF THE CURRENT FINANCIAL CONDITION OF THE RECEIVERSHIP.**

5.    The Receiver had sufficient cash during this quarter to cover all expenses of the Receivership Estate and believes that he will continue to have sufficient cash in the Estate to cover

all foreseeable expenses. The Receiver is not concerned that the Estate will be unable to cover its ongoing expenses as the Receiver, his counsel, and his accountants at BRG have voluntarily agreed to this point to refrain from taking any fees until the Estate recovers at least three times the amount of their fees. The Receiver is confident that through the liquidation of assets and claw back recoveries, the Receivership Estate will have sufficient funds to cover all Receivership expenses and make a meaningful return to victims. Through the end of the quarter, the Receiver and his team's efforts have recovered over $28.5 million in net sale proceeds for the Receivership Estate, with total sales well in excess of $29.3 million. The Receiver will provide a more detailed analysis of potential recoveries in future reports.

### III.     **DESCRIPTION OF RECEIPT AND DISBURSEMENTS.**

6.     The Receiver continues to collect outstanding accounts receivable for the Receivership Defendants. A schedule of the receipts and disbursements of the Receiver is attached hereto as Exhibit A.

7.     As previously reported, the Receiver believes that he has identified most, if not all, of the assets that fall within the scope of the Receivership Estate.

8.     At this time, the Receiver has not yet made any disbursements to investors or pre-Receivership creditors of the Receivership Estate. The Court has approved the Receiver's distribution plan, allowing the Receiver to begin making interim disbursements at a later date. *See* Dkt. No. 341. The Receiver is diligently working to resolve several multi-million dollar claims against the Estate, and is in the process of finalizing a claims register that will set forth the Receiver's proposed treatment of each claim.  The Receiver anticipates being in a position to make an initial distribution to victims early part of next year.

### IV.     **DESCRIPTION OF ALL PHYSICAL RECEIVERSHIP PROPERTY.**

9. Outlined above is a description of the physical Receivership assets known to the Receiver, along with their estimated values. The Receiver is still in the process of determining the value of some personal property assets in the Receivership Estate, and the value of most of those assets will not be finally determined until they are sold to an arms-length buyer.

V. **DESCRIPTION OF LIQUIDATED AND UNLIQUIDATED CLAIMS.**

10. As previously reported to the Court, over 80 different investor groups and several hundred individual investors have been identified in this matter.

11. Based on the net winner analyses provided by BRG, the Receiver has identified over $50 million of potential net winner claims which the Receiver is currently working to recover. The number and value of these potential claims are based primarily on the books, records and correspondence of the Receivership Defendants, and are therefore fluid and subject to ongoing investigation and change.

12. As part of the Receiver's recovery efforts, scores of ancillary lawsuits have been filed against potential claw back defendants of the Receivership Estate. In total, these actions include 30 separate claw back filings against approximately 124 different investors. The Receiver and his team continue to either prosecute these claims or settle such claims as favorable agreements are reached by the parties.

13. As set forth above and in prior reports, the Receiver has also made a significant effort to minimize the number of necessary filings by coordinating the execution of over 170 tolling agreements with various investors. Because the determination of whether these investors are net winners often depends on the metal transactions associated with each investor, the Receiver has worked closely with his legal counsel and accountants to determine whether there is adequate support in the books and records of the Receivership Estate to recognize such metal transactions.

14. As part of this analysis, the Receiver and his team have also engaged in ongoing discussions with various potential net winners to determine whether the investors have any additional documentation to support their metal transactions. Through these discussions, the Receiver has been able to confirm or reject the net winner status of many investors who dealt with the silver investment pool through metal transactions. Given the magnitude of these metal transactions, however, the Receiver expects that this analysis will take significant coordination with investors and his team to resolve all of the potential claw back determinations in this matter.

15. As a result of the Court granting the Receiver's Motion for Settlement Authority (*See* Dkt. No. 271), and the Receiver's ongoing settlement efforts, the Receiver recovered approximately $21,265 in claw back negotiations during this last quarter. The Receiver continues to finalize agreements and negotiate with investors and creditors to increase the number of settlement agreements. Currently, the Receiver is in varying phases of final approval for over 20 settlement agreements. These agreements attempt to get the largest return of funds while minimizing administrative burden to the Receivership Estate. The Receiver remains hopeful that many of the fraudulently transferred funds will be recovered without having to incur the cost of formal litigation.

16. **The Oberhansly Matter**. Fern Oberhansly made her first investment into the Silver Pool in September 2008. Over the next several years, Ms. Oberhansly invested a total of $2,612,939 into the Silver Pool. At the time of Ms. Oberhansly's death in 2017, her initial investment had grown to over $42 million according to statements provided by Gaylen Rust.

17. Due to the size and growth of Ms. Oberhansly's Silver Pool account, Ms. Oberhansly's heirs faced an estate tax liability of approximately $16.4 million. Ms. Oberhansly's heirs did not have the ability to pay the massive tax bill and thus approached Gaylen to withdraw

enough funds from the Silver Pool account to pay the estate taxes. Over the course of one week, Gaylen provided seven transfers to the Oberhansly estate totaling $16.4 million, which was then paid to the IRS to satisfy the estate tax obligation.

18. Because Gaylen did not operate the Silver Pool as Ms. Oberhansly believed, the $42 million in her account did not exist. Accordingly, the Receiver, with the cooperation of Ms. Oberhansly's estate, has filed an amended tax return seeking a refund of the excess estate taxes paid based on the mistaken belief that when Ms. Oberhansly died, she held an investment in the Silver Pool that was valued at over $42 million. It is the Receiver's understanding that the process of recovering the excess estate taxes from the IRS could take a considerable amount of time. If successful, the Receiver anticipates recovering well over $10 million from the IRS for the Receivership Estate.

VI. **LIST OF KNOWN CREDITORS OF THE RECEIVERSHIP.**

19. As previously reported to the Court, the Receiver initiated the claims process which included a claims deadline of October 4, 2019. As a result of this process, the Receiver received approximately 623 claim forms from potential claimants and creditors of the Receivership Estate. An updated list of the first and last names of each of these claimants is attached hereto as Exhibit B.

VII. **STATUS OF CREDITOR CLAIMS PROCEEDINGS.**

20. The Receiver and his team have continued their efforts this quarter to review and analyze the claim forms submitted by potential Receivership claimants to determine whether such claims should be allowed or denied by the Court. This continues to be an intensive process that requires ongoing coordination between the Receiver's counsel and his accountants. As part of this analysis, the Receiver's team is entering the relevant claim form data into an electronic master

matrix to help track the status of each creditor's claim. All claim forms submitted by investors, trade vendors and customers have been reviewed and analyzed. The Receiver anticipates filing this next quarter a claims register, setting forth the Receiver's position on each claim.

### VIII. **RECOMMENDATION TO CONTINUE THE RECEIVERSHIP.**

21. While the Receiver is still in the process of liquidating some personal property within the Receivership Estate, his main focus in on recovering a significant amount of funds from various claw back defendants. The Receiver is also still working to finalize his review of the claim forms submitted by potential claimants of the Estate who allege significant harm as a result of the Receivership Defendants' actions. The Receiver anticipates that the continuation of the Receivership will generate a significant amount of additional funds that will ultimately be distributed for the benefit of defrauded investors and other Receivership claimants. Accordingly, the Receiver recommends the continuation of the Receivership.

DATED this 29th day of October 2021.

**PARR BROWN GEE & LOVELESS**

 /s/ Joseph M.R. Covey
Joseph M.R. Covey
101 South 200 East, Suite 700
Salt Lake City, UT 84111
(801) 532-7840
jcovey@parrbrown.com
*Attorney for Receiver Jonathan O. Hafen*

**CERTIFICATE OF SERVICE**

I hereby certify that service of the above **RECEIVER'S TWELFTH QUARTERLY STATUS REPORT** was (1) emailed to all those on the master mailing matrix maintained by the Receiver; (2) posted on the Receiver's website (rustrarecoinreceiver.com); and (3) electronically filed with the Clerk of the Court through the CM/ECF system on October, 29 2021, which sent notice of the electronic filing to all counsel of record, as indicated below:

| | |
|---|---|
| Kristen R. Angelos<br>UTAH FEDERAL DEFENDER OFFICE<br>46 W BROADWAY STE 110<br>SALT LAKE CITY, UT 84101<br>(801)524-4010<br>kris_angelos@fd.org | Walter F. Bugden<br>BUGDEN & ISAACSON LLC<br>445 E 200 S STE 150<br>SALT LAKE CITY, UT 84111<br>(801)467-1700<br>wally@bilaw.net |
| Jennifer Juniper Chapin<br>COMMODITY FUTURES TRADING COMMISSION<br>4900 MAIN ST STE 500<br>KANSAS CITY, MO 64112<br>(816)960-7746<br>jchapin@cftc.gov | P. Matthew Cox<br>SNOW CHRISTENSEN & MARTINEAU<br>10 EXCHANGE PLACE 11TH FL<br>PO BOX 45000<br>SALT LAKE CITY, UT 84145-5000<br>(801)521-9000<br>pmc@scmlaw.com |
| Andrew G. Deiss<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)433-0226<br>adeiss@deisslaw.com | Sean N. Egan<br>SOUTH TEMPLE TOWER STE 1505<br>136 E SOUTH TEMPLE<br>SALT LAKE CITY, UT 84111-1139<br>(801)363-5181<br>(801)363-5184 (fax)<br>seannegan@sneganlaw.com |
| Paula Woodland Faerber<br>UTAH ATTORNEY GENERALS OFFICE<br>160 E 300 S 5TH FLOOR<br>SALT LAKE CITY, UT 84114<br>(801)366-0248<br>pfaerber@agutah.gov | Jacob L. Fonnesbeck<br>SMITH WASHBURN LLP<br>8 E BROADWAY STE 320<br>SALT LAKE CITY, UT 84111<br>(801)584-1800<br>jfonnesbeck@smithwashburn.com |
| Robert K. Hunt<br>UTAH FEDERAL DEFENDER OFFICE<br>46 W BROADWAY SUITE 110<br>SALT LAKE CITY, UTAH 84101<br>(801)524-4010<br>robert_hunt@fd.org | Jennifer R. Korb<br>UTAH ATTORNEY GENERAL'S OFFICE<br>160 E 300 S 5TH FL<br>SALT LAKE CITY, UT 84114<br>(801)366-0310<br>jkorb@agutah.gov |
| Thomas M. Melton<br>UTAH ATTORNEY GENERAL'S OFFICE<br>160 E 300 S STE 500 | Corey Drew Riley<br>DEISS LAW PC<br>10 W 100 S STE 425 |

| | |
|---|---|
| SALT LAKE CITY, UT 84111<br>(801)366-0320<br>tmelton@agutah.gov | SALT LAKE CITY, UT 84101<br>(801)433-0226<br>criley@deisslaw.com |
| John Robinson, Jr.<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)433-0226<br>jrobinson@deisslaw.com | Thomas L. Simek<br>COMMODITY FUTURES TRADING COMMISSION<br>4900 MAIN ST STE 500<br>KANSAS CITY, MO 64112<br>(816)960-7760<br>tsimek@cftc.gov |
| Jessica Stengel<br>46 W BROADWAY STE 110<br>SALT LAKE CITY, UT 84101<br>(801)524-4010<br>jessica_stengel@fd.org | Richard A. Van Wagoner<br>SNOW CHRISTENSEN & MARTINEAU<br>10 EXCHANGE PLACE 11TH FL<br>PO BOX 45000<br>SALT LAKE CITY, UT 84145-5000<br>(801)521-9000<br>rvanwagoner@scmlaw.com |
| D. Loren Washburn<br>SMITH WASHBURN LLP<br>8 E BROADWAY STE 320<br>SALT LAKE CITY, UT 84111<br>(801)584-1800<br>lwashburn@smithwashburn.com | Steven T. Waterman<br>DORSEY & WHITNEY LLP<br>111 S MAIN ST 21ST FL<br>SALT LAKE CITY, UT 84111-2176<br>(801)933-7360<br>waterman.steven@dorsey.com |
| Brenda E. Weinberg<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)933-226<br>bweinberg@deisslaw.com | Robert G. Wing<br>UTAH ATTORNEY GENERAL'S OFFICE<br>(160-5-140872)<br>160 E 300 S 5TH FLOOR<br>PO BOX 140872<br>SALT LAKE CITY, UT 84114-0872<br>(801)599-6891<br>rwing@agutah.gov |

          /s/ *Joseph M.R. Covey*
          Joseph M.R. Covey