Joseph M.R. Covey (7492) (jcovey@parrbrown.com)
Cynthia D. Love (14703) (clove@parrbrown.com)
Walter O. Peterson (17300) (wpeterson@parrbrown.com)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Jonathan O. Hafen as Receiver*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>STATE OF UTAH DIVISION OF SECURITIES, through Attorney General Sean D. Reyes<br><br>   Plaintiffs,<br>      v.<br><br>RUST RARE COIN INC., a Utah corporation, and GAYLEN DEAN RUST, an individual, DENISE GUNDERSON RUST, an individual, JOSHUA DANIEL RUST, an individual,<br><br>   Defendants;<br><br>and<br><br>ALEESHA RUST FRANKLIN, an individual, R LEGACY RACING INC., a Utah corporation, R LEGACY ENTERTAINMENT LLC, a Utah limited liability company, and R LEGACY INVESTMENTS LLC, a Utah limited liability company.<br><br>   Relief Defendants. | **RECEIVER'S THIRTEENTH QUARTERLY STATUS REPORT**<br><br>*For the period October 1, 2021 to December 31, 2021*<br><br><br>Civil No. 2:18-cv-00892-TC<br><br>Honorable Tena Campbell<br><br>Magistrate Judge Dustin Pead |

Jonathan O. Hafen, the Court-Appointed Receiver for the assets of Rust Rare Coin Inc., Gaylen Dean Rust, Denise Gunderson Rust, Joshua Rust, Aleesha Rust Franklin, R Legacy Racing Inc., R Legacy Entertainment LLC, and R Legacy Investments LLC (collectively, "Receivership Defendants"), hereby submits this Thirteenth Quarterly Status Report for the period of October 1, 2021 through December 31, 2021, pursuant to Section XIII, paragraph 53 of this Court's Order Appointing Receiver and Staying Litigation, dated November 27, 2018 (the "Appointment Order"). *See* Dkt. No. 54.

As instructed by the Court, this Report addresses:

I. A summary of the operations of the Receiver, including significant developments during the quarter.

II. A summary of the current financial condition of the Receivership.

III. A summary of the receipts and disbursements of the Receivership.

IV. A description of known Receivership property, including approximate valuations and anticipated dispositions.

V. A description of liquidated and unliquidated claims of the Receivership, including the need for forensic and investigatory resources, approximate values of those claims, and anticipated methods of enforcing such claims.

VI. A list of known creditors of the Receivership.

VII. The status of creditor claims proceedings.

VIII. The Receiver's recommendations for continuation of the Receivership.

I. **SUMMARY OF OPERATIONS OF THE RECEIVER, INCLUDING SIGNIFICANT DEVELOPMENTS DURING THE QUARTER**

A. **General Developments**

1. **Claims Analysis.** This quarter, the Receiver and his team continued to make progress on their review, analysis, and verification of the claim forms submitted by potential claimants of the Receivership Estate. At the end of the quarter, there have been approximately

625 claim forms submitted to the Estate, and the total amount of self-reported losses identified by such claimants is approximately $171 million. The Receiver and his team continue to diligently analyze the submitted claims and have coordinated with the Court to ensure that the review process is both thorough and efficient. The Receiver and his team review each claim to determine the accuracy of the dollar amount asserted, as well as the basis and priority of the claim. At this time, the Receiver and his team have reviewed all claim forms submitted by potential claimants, including investors.

    2.    **Claims Registry**. The Receiver and his team have created a Claims Registry distilling the analysis done by the Receiver, his attorneys and his forensic accounting team. This Registry identifies all 625 claims by number and name and sets forth the Receiver's proposed treatment of each claim. The Registry identifies whether the Receiver accepts or denies all or part of each claim and, for claims that are denied in any part, provides an explanation for the basis of such denial.  The explanations in the Registry will, when appropriate, explain how the Court's prior guidance impacts the claim.  The Receiver has endeavored to be accurate, equitable and transparent with his application of Court guidance to the many varied factual scenarios presented by claims. Along with the Registry, the Receiver will file a motion setting forth an expedited procedure for claimants to object to the Receiver's proposed treatment if they so desire.

    3.    **Claw Back Actions.** As previously reported, the Receiver and his team have filed numerous claw back actions against approximately 124 different investors seeking recovery of amounts they were paid in excess of their actual investments. In addition, the Receiver made a significant effort to minimize the number of lawsuits by entering into over 170 tolling agreements

with various potential net winners. As discussed in more detail below,[1] the Receiver continues to work closely with net winners and their counsel to secure favorable resolutions of such actions.

**B. Liquidation of Real Property.** The Receiver did not liquidate any real property during this quarter.

**C. Liquidation of Personal Property.** The Receiver did not liquidate any personal property during this quarter.

**D. Recovery and Sale of Other Receivership Property**

1. **Intellectual Property.** The Receivership Estate includes certain intellectual property related to Huge Studios, Torque Entertainment, and YourLDSMusicStore. As previously reported, the sale and/or auction of these intangible assets requires significant analysis and cost to the Estate given the interrelated nature of Huge Studios, Torque Entertainment, Writer's Den, and YourLDSMusicStore. To date, the Receiver has not found a buyer who is willing to pay an amount sufficient to justify the cost of analyzing the assets. Accordingly, the Receiver does not believe it to be in the best interest of the Receivership Estate to further expend resources pursuing the sale of these assets.

2. **Investor Communications.** The Receiver continues to post updates to the Receivership's website (rustrarecoinreceiver.com) when filings are made with the Court. The Receiver has also distributed by email copies of all filings and notices to the approximately 800 individuals listed on the Receiver's master mailing matrix. The Receiver also continues to communicate with investors about objections and proposed actions. The Receiver has also filed all objections on behalf of investors, when required by the Courts Summary Disposition Procedures.

---

[1] *See* Section V.

3.      **Tax Issues.** The Receiver continues to work with his accountants at Berkley Research Group ("BRG") to ensure the Receivership's various tax obligations are being met, including the amounts owed in relation to the Receivership's property and the amounts associated with the business entities still within the scope of the Receivership Estate.

4.      **Discovery Productions and Redaction.** The Receiver has compiled and produced a vast amount of documents, including financial statements and investor communications, for the benefit of the Court, investors, and net winners in claw back actions. Currently, over 300,000 documents have been reviewed for production. In addition to the substantial amount of time reviewing, compiling and producing documents, the Receiver has also completed a large-scale redaction of documents. In an effort both to ensure the privacy of hundreds of victims and minor children, while still respecting the rights of net winner litigants to documents, the Receiver has created a set of redacted documents for production in its ancillary litigation proceedings. These documents have been redacted for social security numbers, birth dates and account numbers of investors.

II.     **SUMMARY OF THE CURRENT FINANCIAL CONDITION OF THE RECEIVERSHIP.**

1.   The Receiver had sufficient cash during this quarter to cover all expenses of the Receivership Estate and believes that he will continue to have sufficient cash in the Estate to cover all foreseeable expenses. The Receiver is not concerned that the Estate will be unable to cover its ongoing expenses as the Receiver, his counsel, and his accountants at BRG have voluntarily agreed, to this point, to refrain from taking any fees until the Estate recovers at least three times the amount of their fees. The Receiver is confident that through the liquidation of assets and claw back recoveries, the Receivership Estate will have sufficient funds to cover all Receivership

5

expenses and make a meaningful return to victims. Through the end of the quarter, the Receiver and his team's efforts have recovered over 28.9 million in net sale proceeds for the Receivership Estate, with total sales well in excess of 29.8 million.

    III.    **DESCRIPTION OF RECEIPT AND DISBURSEMENTS.**

    1.    The Receiver continues to collect outstanding accounts receivable for the Receivership Defendants. A schedule of the receipts and disbursements of the Receiver is attached hereto as Exhibit A.

    2.    As previously reported, the Receiver believes that he has identified most, if not all, of the physical assets that fall within the scope of the Receivership Estate.

    3.    At this time, the Receiver has not yet made any disbursements to investors or pre-Receivership creditors of the Receivership Estate. The Court has approved the Receiver's distribution plan, allowing the Receiver to begin making interim disbursements at a later date. *See* Dkt. No. 341. The Receiver is diligently working to resolve several multi-million dollar claims against the Estate, and is in the process of finalizing a claims register that will set forth the Receiver's proposed treatment of each claim. The Receiver anticipates being in a position to make an initial distribution to victims in 2022.

    IV.    **DESCRIPTION OF ALL PHYSICAL RECEIVERSHIP PROPERTY.**

    1.    No physical assets of any material value remain in the Receivership Estate. If and when the Receiver is able to sell any remaining physical assets, their value will be determined by what an arms-length buyer is willing to pay.

    V.    **DESCRIPTION OF LIQUIDATED AND UNLIQUIDATED CLAIMS.**

    1.    As previously reported to the Court, over 80 different investor groups and several hundred individual investors have been identified in this matter.

2.      Based on the net winner analyses provided by BRG, the Receiver has identified over $50 million of potential net winner claims which the Receiver is currently working to recover. The number and value of these potential claims are based primarily on the books, records and correspondence of the Receivership Defendants, and are therefore fluid and subject to ongoing investigation and change.

3.      As part of the Receiver's recovery efforts, scores of ancillary lawsuits have been filed against potential claw back defendants of the Receivership Estate. In total, these actions include numerous separate claw back filings against approximately 124 different investors. The Receiver and his team continue to either prosecute these claims or settle them when favorable terms can be reached.

4.      As set forth above and in prior reports, the Receiver has also made a significant effort to minimize the number of necessary filings by coordinating the execution of over 170 tolling agreements with various investors. Because the determination of whether these investors are net winners often depends on the metal transactions associated with each investor, the Receiver has worked closely with his legal counsel and accountants to determine whether there is adequate support in the books and records of the Receivership Estate to recognize such metal transactions.

5.      As part of this analysis, the Receiver and his team have also engaged in ongoing discussions with various potential net winners to determine whether the investors have any additional documentation to support their metal transactions.  Through these discussions, the Receiver has been able to confirm or reject the net winner status of many investors who dealt with the silver investment pool through metal transactions. Given the magnitude of these metal transactions, however, the Receiver expects that this analysis will take significant coordination

with investors and with the Receiver's team to resolve all the potential claw back determinations in this matter.

6. The Receiver has engaged in formal and informal settlement negotiations with many net winners, while protecting the Estates interest with tolling agreements. Many of these negotiations have resulted in recoveries for the Estate, and others have reached impasses resulting in the Receiver filing additional ancillary actions in order to move matters forward.

7. As a result of the Court granting the Receiver's Motion for Settlement Authority (*See* Dkt. No. 271), and the Receiver's ongoing settlement efforts, the Receiver recovered approximately $229,917 in claw back negotiations during this last quarter. The Receiver continues to finalize agreements and negotiate with investors and creditors to increase the number of settlement agreements. Currently, the Receiver is in varying phases of final approval for over 20 settlement agreements. These agreements attempt to get the largest return of funds while minimizing administrative burden to the Receivership Estate. The Receiver remains hopeful that many of the fraudulently transferred funds will be recovered without having to incur the cost of formal litigation.

8. **Utah State University Settlement**. During the review of financial records and transactions, it was discovered that Gaylen and Denise Rust donated money to Utah State University (the "University"). It was initially believed that the Rusts had donated $214,181.00 to the University to be used to construct the fine arts center at the University. The Rusts also pledged to contribute another $1.5 million to the University. The Receivership, through the Conflicts Receiver, made a demand on the University for $214,181.00. The University, in turn, asserted a claim against the Receivership for $1.3 million which reflected the unfilled amount of the Rust's pledge.

8

9. Through additional review, the Conflicts Receiver learned that the amount that the Rusts had contributed to the University was significantly higher, $544,804.33, and increased the demand on the University accordingly. The Conflicts Receiver subsequently filed a Notice of Claim with the State of Utah and a lawsuit against the University in U.S. District Court.

10. After the complaint was filed, the parties resumed settlement negotiations. This Application Period, the parties agreed to a settlement pursuant to which the University agreed to (i) pay the Receivership Estate $381,364 which represents 70% of the Rust's donations to the University, and (ii) withdraw its claim for $1.3 million against the Receivership Estate. The settlement agreement was submitted to the Court and approved on October 15, 2021. S*ee* Dkt No. 432.

11. **The Oberhansly Matter**. Fern Oberhansly made her first investment into the Silver Pool in September 2008. Over the next several years, Ms. Oberhansly invested a total of $2,612,939 into the Silver Pool. At the time of Ms. Oberhansly's death in 2017, her initial investment had grown to over $42 million according to statements provided by Gaylen Rust.

12. Due to the size and growth of Ms. Oberhansly's Silver Pool account, Ms. Oberhansly's heirs faced an estate tax liability of approximately $16.4 million. Ms. Oberhansly's heirs did not have the ability to pay the massive tax bill and thus approached Gaylen Rust to withdraw enough funds from the Silver Pool account to pay the estate taxes. Over the course of one week, Gaylen provided seven transfers to the Oberhansly estate totaling $16.4 million, which was then paid to the IRS to satisfy the estate tax obligation.

13. Because Gaylen did not operate the Silver Pool as Ms. Oberhansly believed, the $42 million in her account did not exist. Accordingly, the Receiver, with the cooperation of Ms. Oberhansly's estate, has filed an amended tax return seeking a refund of the excess estate taxes

paid based on the mistaken belief that when Ms. Oberhansly died, she held an investment in the Silver Pool that was valued at over $42 million. It is the Receiver's understanding that the process of recovering the excess estate taxes from the IRS could take a considerable amount of time. The Receiver has been informed that the IRS has acknowledged receipt of the return and is now processing the return. If successful, the Receiver anticipates recovering well over $10 million from the IRS for the Receivership Estate.

VI.     **LIST OF KNOWN CREDITORS OF THE RECEIVERSHIP.**

1.      As previously reported to the Court, the Receiver initiated the claims process which included a claims deadline of October 4, 2019. As a result of this process, the Receiver received approximately 625 claim forms from potential claimants and creditors of the Receivership Estate. An updated list of the first and last names of each of these claimants is attached hereto as Exhibit B.

VII.    **STATUS OF CREDITOR CLAIMS PROCEEDINGS.**

1.      The Receiver and his team have continued their efforts this quarter to review and analyze the claim forms submitted by potential Receivership claimants to determine whether such claims should be allowed or denied by the Court. This continues to be an intensive process that requires ongoing coordination between the Receiver's counsel and his accountants. As part of this analysis, the Receiver's team is entering the relevant claim form data into an electronic master matrix to help track the status of each creditor's claim. All claim forms submitted by investors, trade vendors and customers have been reviewed and analyzed.  The Receiver anticipates filing this next quarter a claims Registery setting forth the Receiver's position on each claim.

VIII. **RECOMMENDATION TO CONTINUE THE RECEIVERSHIP.**

1. While the Receiver is still in the process of liquidating some personal property within the Receivership Estate, his main focus is on recovering a significant amount of funds from various claw back defendants. The Receiver is also still working to finalize his proposed treatment of the claims submitted by those who allege significant harm as a result of the Receivership Defendants' actions. The Receiver anticipates that the continuation of the Receivership will generate a significant amount of additional funds that will ultimately be distributed for the benefit of defrauded investors and other Receivership claimants. Accordingly, the Receiver recommends the continuation of the Receivership.

DATED this 31st day of January 2022.

                **PARR BROWN GEE & LOVELESS**

                */s/ Joseph M.R. Covey*
                Joseph M.R. Covey
                101 South 200 East, Suite 700
                Salt Lake City, UT 84111
                (801) 532-7840
                jcovey@parrbrown.com
                *Attorney for Receiver Jonathan O. Hafen*

**CERTIFICATE OF SERVICE**

I hereby certify that service of the above **RECEIVER'S THIRTEENTH QUARTERLY STATUS REPORT** was (1) emailed to all those on the master mailing matrix maintained by the Receiver; (2) posted on the Receiver's website (rustrarecoinreceiver.com); and (3) electronically filed with the Clerk of the Court through the CM/ECF system on January 31, 2022, which sent notice of the electronic filing to all counsel of record, as indicated below:

| | |
|---|---|
| Kristen R. Angelos<br>UTAH FEDERAL DEFENDER OFFICE<br>46 W BROADWAY STE 110<br>SALT LAKE CITY, UT 84101<br>(801)524-4010<br>kris_angelos@fd.org | Walter F. Bugden<br>BUGDEN & ISAACSON LLC<br>445 E 200 S STE 150<br>SALT LAKE CITY, UT 84111<br>(801)467-1700<br>wally@bilaw.net |
| Jennifer Juniper Chapin<br>COMMODITY FUTURES TRADING COMMISSION<br>4900 MAIN ST STE 500<br>KANSAS CITY, MO 64112<br>(816)960-7746<br>jchapin@cftc.gov | P. Matthew Cox<br>SNOW CHRISTENSEN & MARTINEAU<br>10 EXCHANGE PLACE 11TH FL<br>PO BOX 45000<br>SALT LAKE CITY, UT 84145-5000<br>(801)521-9000<br>pmc@scmlaw.com |
| Andrew G. Deiss<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)433-0226<br>adeiss@deisslaw.com | Sean N. Egan<br>SOUTH TEMPLE TOWER STE 1505<br>136 E SOUTH TEMPLE<br>SALT LAKE CITY, UT 84111-1139<br>(801)363-5181<br>(801)363-5184 (fax)<br>seannegan@sneganlaw.com |
| Paula Woodland Faerber<br>UTAH ATTORNEY GENERALS OFFICE<br>160 E 300 S 5TH FLOOR<br>SALT LAKE CITY, UT 84114<br>(801)366-0248<br>pfaerber@agutah.gov | Jacob L. Fonnesbeck<br>SMITH WASHBURN LLP<br>8 E BROADWAY STE 320<br>SALT LAKE CITY, UT 84111<br>(801)584-1800<br>jfonnesbeck@smithwashburn.com |
| Robert K. Hunt<br>UTAH FEDERAL DEFENDER OFFICE<br>46 W BROADWAY SUITE 110<br>SALT LAKE CITY, UTAH 84101<br>(801)524-4010<br>robert_hunt@fd.org | Jennifer R. Korb<br>UTAH ATTORNEY GENERAL'S OFFICE<br>160 E 300 S 5TH FL<br>SALT LAKE CITY, UT 84114<br>(801)366-0310<br>jkorb@agutah.gov |
| Thomas M. Melton<br>UTAH ATTORNEY GENERAL'S OFFICE<br>160 E 300 S STE 500 | Corey Drew Riley<br>DEISS LAW PC<br>10 W 100 S STE 425 |

| | |
|---|---|
| SALT LAKE CITY, UT 84111<br>(801)366-0320<br>tmelton@agutah.gov | SALT LAKE CITY, UT 84101<br>(801)433-0226<br>criley@deisslaw.com |
| John Robinson, Jr.<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)433-0226<br>jrobinson@deisslaw.com | Thomas L. Simek<br>COMMODITY FUTURES TRADING COMMISSION<br>4900 MAIN ST STE 500<br>KANSAS CITY, MO 64112<br>(816)960-7760<br>tsimek@cftc.gov |
| Jessica Stengel<br>46 W BROADWAY STE 110<br>SALT LAKE CITY, UT 84101<br>(801)524-4010<br>jessica_stengel@fd.org | Richard A. Van Wagoner<br>SNOW CHRISTENSEN & MARTINEAU<br>10 EXCHANGE PLACE 11TH FL<br>PO BOX 45000<br>SALT LAKE CITY, UT 84145-5000<br>(801)521-9000<br>rvanwagoner@scmlaw.com |
| D. Loren Washburn<br>SMITH WASHBURN LLP<br>8 E BROADWAY STE 320<br>SALT LAKE CITY, UT 84111<br>(801)584-1800<br>lwashburn@smithwashburn.com | Steven T. Waterman<br>DORSEY & WHITNEY LLP<br>111 S MAIN ST 21ST FL<br>SALT LAKE CITY, UT 84111-2176<br>(801)933-7360<br>waterman.steven@dorsey.com |
| Brenda E. Weinberg<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)933-226<br>bweinberg@deisslaw.com | Robert G. Wing<br>UTAH ATTORNEY GENERAL'S OFFICE<br>(160-5-140872)<br>160 E 300 S 5TH FLOOR<br>PO BOX 140872<br>SALT LAKE CITY, UT 84114-0872<br>(801)599-6891<br>rwing@agutah.gov |

          /s/ *Joseph M.R. Covey*
          Joseph M.R. Covey