Joseph M.R. Covey (7492) (jcovey@parrbrown.com)
Cynthia D. Love (14703) (clove@parrbrown.com)
Walter O. Peterson (17300) (wpeterson@parrbrown.com)
**PARR BROWN GEE & LOVELESS, P.C.**
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

*Attorneys for Receiver Jonathan O. Hafen*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and STATE OF UTAH DIVISION OF SECURITIES, through Attorney General Sean D. Reyes<br><br>Plaintiffs,<br><br>vs.<br><br>RUST RARE COIN INC., a Utah corporation, and GAYLEN DEAN RUST, an individual, DENISE GUNDERSON RUST, an individual, JOSHUA DANIEL RUST, an individual,<br><br>Defendants;<br><br>and<br><br>ALEESHA RUST FRANKLIN, an individual, R LEGACY RACING INC, a Utah corporation, R LEGACY ENTERTAINMENT LLC, a Utah limited liability company, and R LEGACY INVESTMENTS LLC, a Utah limited liability company.<br><br>Relief Defendants. | **THIRTEENTH INTERIM FEE APPLICATION**<br><br><br>Civil No. 2:18-cv-00892-TC<br><br>Judge Tena Campbell<br><br>Magistrate Judge Dustin Pead |

Jonathan O. Hafen, the Court-Appointed Receiver over the assets of the following Defendants and Relief Defendants: Rust Rare Coin Inc. ("RRC"), Gaylen Dean Rust, R Legacy Racing Inc., R Legacy Entertainment LLC, R Legacy Investments LLC, Gaylen Dean Rust, Denise Gunderson Rust, Joshua Daniel Rust, and Aleesha Rust Franklin (collectively, "Receivership Defendants"), hereby submits this thirteenth interim fee application (this "Fee Application"), seeking approval by the Court for the fees and expenses incurred by the Receiver; the Receiver's counsel, Parr Brown Gee & Loveless ("Parr Brown"); the Receiver's accountants, Berkeley Research Group ("BRG"); the Conflict Receiver, Wayne Klein, and his counsel, Manning Curtis Bradshaw & Bednar; and Moyes Sellers and Hendricks ("Arizona Counsel"), for the period of October 1, 2021 through December 31, 2021 (the "Application Period"). The Receiver seeks authorization to pay all allowed fees and expenses from the Receivership Estate once the Receiver has recovered an amount equal to three times the fees requested in this Fee Application and allowed in prior applications. In support hereof, the Receiver states as follows:

## I.      RELEVANT BACKGROUND

1.      On November 27, 2018, the Court entered an *Order Appointing Receiver and Staying Litigation* (the "Appointment Order"). *See* Dkt. No. 54. Accordingly, the Receiver has worked in concert with his counsel, Parr Brown, and his accountants, BRG, to identify, secure, and liquidate various Receivership assets, identify claimants and creditors of the Receivership Estate, and identify and initiate discussions with net winners to recover funds for the benefit of all Receivership claimants.

2.      The Receiver has filed his *Thirteenth Quarterly Status Report*, which includes a status report for the period of October 1, 2021, through December 31, 2021 (the "Thirteenth Status

Report").[1] The Thirteenth Status Report provides a comprehensive description of the services performed by the Receiver and his professionals during the Application Period and is incorporated herein by reference.

## II.      REQUEST FOR COURT APPROVAL OF FEES AND EXPENSES

3.      The Appointment Order provides, in the relevant part:

57. Subject to Paragraph 59 immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

58. The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates. The Receiver and Retained Personnel shall not be compensated or reimbursed by, or otherwise entitled to, any funds from the Court, the CFTC, or the State of Utah. Such compensation shall require the prior review by Plaintiffs and approval of the Court.

4.      Accordingly, the Receiver respectfully requests that the Court approve the fees and expenses incurred by the Receiver and his team, the Conflict Receiver and his counsel, and Arizona Counsel, as set forth below and in the attached Exhibits.

## III.     FEES AND EXPENSES REQUESTED ARE ACTUAL, NECESSARY AND REASONABLE FOR THE SERVICES RENDERED

5.      During this Application Period, the Receiver and his professionals have provided actual and necessary services for the Receivership Estate as summarized below and detailed in the Exhibits attached hereto. The Exhibits also detail the out-of-pocket expenses incurred by the professionals in rendering services to the Receivership Estate.

6.      Parr Brown, BRG, the Conflict Receiver and Arizona Counsel have submitted their invoices to the Receiver, and the Receiver has reviewed and approved the invoices.

---

[1] Docket No. 440 filed January 31, 2022.

3

7.      This Fee Application complies with the billing instructions set forth in the Appointment Order. The Receiver submitted this Fee Application to the Utah Division of Securities and CFTC prior to filing it with the Court, and both have informed the Receiver that they have no objection to the payment of the fees and reimbursement of the expenses outlined herein.

8.      The Receiver believes that the fees and expenses are reasonable. The Receiver also believes that the services rendered and the expenses advanced have been beneficial to the Receivership Estate.

9.      Consistent with the Receiver's previous fee applications, the Receiver and his professionals have continued to write off time and delay payment to assure that the Receivership Estate will receive an amount at least three times in excess of any fees requested *before* the Receiver and his professionals are paid. In this Fee Application, the Receiver has voluntarily written off all time related to the preparation of any fee application and has otherwise made voluntary downward adjustments to fees and expenses as appropriate.

## IV.    SUMMARY OF AMOUNTS REQUESTED

10.     The total amounts requested for the Receiver, his professionals, the Conflict Receiver and his counsel, and Arizona Counsel in this Fee Application, including the relevant voluntary write downs, are summarized below:

a.      <u>Receiver</u>: From October 1, 2021, through December 31, 2021, the Receiver billed a total of 56.5 hours for services to the Receivership Estate. The Receiver is seeking approval for the payment of fees totaling $20,340. *See* Exhibit A.

b.      <u>Parr Brown</u>: From October 1, 2021, through December 31, 2021, Parr Brown billed a total of 1,183.10 hours for legal services to the Receivership Estate. Parr

Brown is seeking approval for the payment of fees and expenses totaling $307,903.39 of which $303,769 is for fees and $4,134.39 is for out-of-pocket expenses. *See* Exhibit B. These amounts include a voluntary write down of $10,325.00.

      c.    <u>BRG</u>: From October 1, 2021, through December 31, 2021, BRG billed a total of 202.70 hours providing forensic, tax, and general accounting services to the Receivership Estate. BRG is seeking approval for the payment of fees and expenses totaling $65,601.48 of which $65,585.50 is for fees and $15.98 for out-of-pocket expenses. *See* Exhibit C. These amounts include a voluntary write down of $1,202.50.

      d.    <u>Conflict Receiver and counsel</u>: From October 1, 2021, through December 31, 2021, Conflict Receiver, Wayne Klein, and his legal counsel billed a total of 10.1 hours for services to the Receivership Estate. The Conflict Receiver and his counsel are seeking approval for the payment of fees and expenses totaling $3,124.00. *See* Exhibit D.

      e.    <u>Arizona Counsel</u>: Through December 31, 2021, Arizona Counsel billed a total of 66.9 hours for services to the Receivership Estate. Arizona Counsel is seeking approval for the payment of fees and expenses totaling $26,352.50 of which $23,077 is for fees and $3,275.50 for out-of-pocket expenses. *See* Exhibit E.

11.    The amounts requested reflect a total of $11,530.50 in voluntary reductions by the respective professionals in an exercise of their billing judgment.

12.    The Receivership Estate has sufficient funds to pay all amounts requested. However, as set forth above, the Receiver and his professionals will not take any fees or be reimbursed for any expenses from the Receivership Estate until *after* the Receiver recovers at least three times the total amount of the fees requested in this and all previous fee applications.

## V.   SUMMARY OF EXHIBITS

13.   Professional services have been recorded contemporaneously with services being rendered and these services, as well as the expenses incurred, are detailed in the attached Exhibits described below.

14.   The Receiver, Parr Brown, BRG, Arizona Counsel, the Conflict Receiver and his counsel have maintained their time in records organized according to tasks, with each task record being maintained in chronological order.

15.   The following Exhibits are attached hereto in support of this Fee Application:

**Exhibit A—Time Records of Receiver**

**Exhibit A**                    **Summary by Task**

16.   This section of Exhibit A breaks down the total fees assessed for each of the Receiver's tasks, which are discussed in more detail below.

**Exhibit A-1**                    **Administration of Receivership Estate**

17.   The Receiver continued to communicate with the Attorney General's Office to ensure they remain updated about the status of the Receivership Estate and the ongoing claims analysis process and recovery efforts. In addition, the Receiver reviewed certain tax and financial documents related to the administration of the Receivership Estate and assisted in the preparation and filing of the Estate's tax returns.

**Exhibit A-2**                    **Asset Analysis and Recovery**

18.   The Receiver worked closely with his legal counsel during the Application Period in negotiating favorable settlement agreements with net winners. These settlement efforts involved extensive coordination with the Receiver's counsel and required the Receiver to review the supporting documentation and settlement agreements before their execution. The Receiver

continued coordinating with investors and their counsel to substantiate various metal transactions that were associated with such investors.

**Exhibit A-5**          **Claims Administration**

19.     The Receiver worked in tandem with his legal counsel to create a Claims Registry which identifies all 625 claims submitted to date and sets forth the Receiver's proposed treatment of each claim.

**Exhibit B—Time Records of Parr Brown**

**Exhibit B**          **Summary by Task**

20.     This section of Exhibit B breaks down the total fees assessed for each of Parr Brown's tasks, which are discussed in more detail below.

**Exhibit B-1**          **Administration of Receivership Estate**

21.     During this Application Period, Parr Brown continued to manage and keep secure the real property within the Receivership Estate. Parr Brown continued posting motions and Court orders on the Receiver's website and also making updates to the Receiver's mailing matrix to ensure all interested parties received information about the Receivership's progress.

**Exhibit B-2**          **Asset Analysis & Recovery**

22.     As previously reported, after analyzing the cash and metal transactions associated with Mr. Rust's silver pool, Parr Brown was able to identify potential net winners of the Receivership Estate. In order to preserve the Receiver's right to recover funds from net winners, Parr Brown continued to work the numerous claw back actions filed against approximately 124 investors (the "Claw Back Defendants"). Parr Brown also continued working with the 170 potential net winners (the "Net Winners") with whom they executed tolling agreements in order to facilitate further discussions and negotiations regarding their transactions with the Receivership

7

Defendants. As a result of the Court granting the Receiver's Motion for Settlement Authority (*See* Dkt. No. 271), Parr Brown worked diligently to communicate and meet with Claw Back Defendants and Net Winners, and their counsel, to secure favorable settlement agreements where possible. When settlement agreements have not been reached, Parr Brown has taken those actions necessary to move numerous cases forward through the litigation process. Given the vast number of Claw Back Defendants and Net Winners, these recovery efforts have required a significant amount of analysis and review. Parr Brown continues to work closely with the Receiver to finalize agreements and negotiate with investors and creditors to increase the number of settlement agreements. Currently, there are over 22 settlement agreements in varying phases of final approval. These agreements attempt to get the largest return of funds while minimizing administrative burden to the Receivership Estate.

**Exhibit B-4               Claims Administration**

23.        As previously reported, Parr Brown arranged to have over 4,000 hardcopies of the Court-approved claim form sent out to all potential creditors of the Receivership Estate. In response to this process, Parr Brown has received over 625 claim forms from potential creditors. During this Application Period, Parr Brown continued the process of reviewing and verifying the various claim forms submitted to the Receivership Estate. This involves ongoing correspondence with both the Receiver and his accountants at BRG. To date, Parr Brown has reviewed all claim forms submitted by potential claimants to determine whether such claims will be allowed or subject to objection. All claim forms submitted by investors, trade vendors and customers have been analyzed by comparing the asserted losses with data from the books and records of the Receivership Defendants.

24.      Parr Brown worked closely with the Receiver to create a Claims Registry distilling the analysis done by the Receiver, his attorneys and his forensic accounting team. This Registry identifies all 625 claims by number and name and sets forth the Receiver's proposed treatment of each claim. The Registry identifies whether the Receiver accepts or denies all or part of each claim and, for claims that are denied in any part, provides an explanation for the basis of such denial.  The explanations in the Registry will, when appropriate, explain how the Court's prior guidance impacts the claim.  The Receiver has endeavored to be accurate, equitable and transparent with his application of Court guidance to the many varied factual scenarios presented by claims.

**Exhibit C—Time Records of BRG**

25.      This section breaks down the total fees assessed by BRG, which are discussed in more detail below.

**Net Winner/Claims Analysis**

BRG has continued to assist the Receiver and his team in reviewing and analyzing filed claims to verify accuracy and reconcile differences between the amounts reported by investors and the data identified in RRC and bank records, as well as the recording and tracking of filed claims.

BRG also continues to perform extensive analysis of cash receipt and disbursement activity, transaction support, investor files, email communications, as well as information received from individual investors through questionnaire responses, claim filings, and document requests for various investors and investor groups in order to identify and determine the amount of funds invested and draws taken by each individual / group. One of the complicating factors in this analysis is the quantity of transactions that are "non-

cash" in nature. In its analysis, BRG has identified many non-cash transactions that occurred between RRC and investors that involve investments and draws using physical metals, which are then converted and credited to the investor's account. This information is not captured in the cash receipt and disbursement activity and is only identified through additional supporting information such as RRC receipts, email communications, investor statements and RRC investor files.

Notwithstanding the difficulties noted above, BRG's analysis has been critical in assisting the Receiver to identify and verify potential claw backs to pursue, as well as potential claims by investors. BRG has developed and provided analyses to the Receiver for various investors to be used in discussions, negotiations, and potential recoveries. BRG has also been involved in assisting the Receiver to respond to investors and their counsel in providing requested documents and support for its analyses.

Additionally, BRG assisted the Receiver in communications, including attending various meetings and calls, with investors and their counsel to obtain additional information and support regarding investment activity. BRG worked with the Receiver and his counsel to analyze and review proposed settlement offers and financial information from investors to determine the appropriateness and accuracy of such offers. BRG also assisted in mediation proceedings in connection with settlement negotiations between the Receiver and claw back defendants.

Finally, in connection with the claw back litigations, BRG reviewed court filings prepared by the Receiver, as well as those filed by claw back defendants and prepared for and attended depositions of a claw back defendants.

**Tax Compliance, Analysis & Preparation**

26.     BRG reviewed and prepared the filing of the 2020 income tax returns of the Receivership. BRG also reviewed and analyzed tax information and assisted the Receiver with any tax related issues that arose.

**Claims Process / Distribution**

27.     BRG discussed and met with the Receiver and his professionals several times regarding the on-going claims analysis and the plan for the distribution process. BRG assisted the Receiver in evaluating methodologies for distribution, as well as developing a transparent claims distribution process for claimants. BRG also assisted the Receiver in developing and maintaining a claims database/register and the information contained therein to assist in the claims distribution process.

**Exhibit D—Time Records of Conflict Receiver and His Counsel**

28.     This section breaks down the total fees assessed by the Conflict Receiver and his counsel, which are discussed in more detail below.

29.     During this Application Period, the Conflict Receiver and his counsel continued their correspondence and review of documentation related to claw back defendants, including the claim that the Receivership has against Utah State University (the "University"). During the review of financial records and transactions, it was discovered that Gaylen and Denise Rust had made significant donations to the University. It was initially believed that the Rusts had donated $214,181.00 to the University to be used to construct the fine arts center at the University. The Rusts also pledged to contribute another $1.5 million to the University. The Conflicts Receiver made a demand on the University for $214,181.00. The University, in turn, asserted a claim against the Receivership for $1.3 million which reflected the unfulfilled amount of the Rust's pledge.

30.     Through additional review, the Conflicts Receiver learned that the amount that the Rusts had contributed to the University was significantly higher, $544,804.33, and increased the demand on the University accordingly. The Conflicts Receiver subsequently filed a Notice of Claim with the State of Utah and a lawsuit against the University in U.S. District Court.

31.     After the complaint was filed, the parties resumed settlement negotiations. This Application Period, the parties agreed to a settlement pursuant to which the University agreed to (i) pay the Receivership Estate $381,364 which represents 70% of the Rust's donations to the University, and (ii) withdraw its claim for $1.3 million against the Receivership Estate. The settlement agreement was submitted to the Court and approved on October 15, 2021. S*ee* Dkt No. 432.

**Exhibit E—Time Records of Arizona Counsel**

32.     This section outlines the services provided by the law firm of Moyes Sellers and Hendricks ("Arizona Counsel"), which are discussed in more detail below.

33.     In response to a Motion for Order Authorizing Receiver to Employ Arizona Counsel [Dkt. No. 410], the Court entered an Order [Dkt. No. 411] authorizing the Receiver to employ Arizona Counsel to pursue Marilyn McGrath in her chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Arizona (the "McGrath Bankruptcy").

34.     Between 2014 and 2018, Mrs. McGrath received over $2.6 million from Gaylen Rust without any investment into the Ponzi scheme.  She alleges that she disposed of all the money through casino gambling.  Given the large dollar amount, the Receiver engaged Arizona Counsel to participate in Mrs. McGrath's bankruptcy case in order to determine whether there were any assets to recover and to file a non-discharge lawsuit against Mrs. McGrath. Beginning in May 2021, Arizona Counsel has actively participated in Mrs. McGrath's bankruptcy case by attending

the meeting of creditors and asking questions about assets, objecting to certain bankruptcy exemptions, hiring a private investigator to look for assets, deposing Mrs. McGrath and her husband about their receipt and disposal of the $2.6 million, and pursuing a non-discharge lawsuit against Mrs. McGrath to avoid the debt she owes to the Receivership Estate from becoming discharged in her bankruptcy case.

35.     Exhibit E includes the records for all services performed and expenses incurred by Arizona Counsel from May 2021 through December 31, 2022, related to the McGrath Bankruptcy. Arizona Counsel is currently working to finalize a settlement agreement with Mr. and Mrs. McGrath in which they will stipulate to an order of non-discharge related to the $2.6 million for an extended period of time, to allow the Receiver more time to investigate where the money may have gone.

## VI.     PRIOR REQUESTS AND INTERIM NATURE OF REQUEST

36.     The Receiver has previously filed twelve interim fee applications,[2] all of which were approved by the Court. *See* Dkt. Nos. 153, 203, 247, 275, 293, 339, 367, 382, 413, 416, 428 and 434.  This is the Thirteenth Interim Fee Application of the Receiver and his professionals

The Receiver and his professionals understand that the authorization and payment of fees and expenses is interim in nature. All fees and expenses allowed on an interim basis will be subject to final review at the close of the case and the discharge of the Receiver when the Receiver files a

---

[2] The Receiver's First Interim Fee Application was filed on February 22, 2019. *See* Dkt. No. 120. The Receiver's Second Interim Fee Application was filed on May 24, 2019. *See* Dkt. No. 187. The Receiver's Third Interim Fee Application was filed on September 4, 2019. *See* Dkt. No. 241. The Receiver's Fourth Interim Fee Application was filed on December 31, 2019. *See* Dkt. No. 274. The Receiver's Fifth Interim Fee Application was filed on March 10, 2020. *See* Dkt. No. 292. The Receiver's Sixth Interim Fee Application was filed on August 7, 2020. *See* Dkt. No. 333. The Receiver's Seventh Interim Fee Application was filed on November 13, 2020. *See* Dkt. No. 367. The Receiver's Eighth Interim Fee Application was filed on January 15, 2021. *See* Dkt. No. 382. The Receiver's Ninth Interim Fee Application was filed on May 27, 2021. *See* Dkt. No. 413. The Receiver's Tenth Interim Fee Application was filed on July 6, 2021. *See* Dkt. No. 416. The Receiver's Eleventh Interim Fee Application was filed on October 5, 2021. *See* Dkt. No. 428. The Receiver's Twelfth Interim Fee Application was filed on December 13, 2021. *See* Dkt. No. 434.

final accounting and the Receiver and his professional's file final fee applications.

37.     For the reasons set forth above, and as supported by the Exhibits attached hereto, the Receiver respectfully submits that the fees and expenses requested herein are for actual services that were necessary for and beneficial to the administration of the Receivership Estate. The Receiver has made every attempt to limit the administrative expenses of this Receivership Estate, and the Receiver submits that given the work that has been performed as reflected in the attached time entries, the fees and expenses that have been incurred are reasonable.

38.     Pursuant to Paragraph 62 of the Appointment Order, *see* Dkt. No. 54, the Receiver represents and avers that this Fee Application complies with the terms of the billing instructions agreed to by the Receiver, the fees and expenses included therein were incurred in the best interests of the Receivership Estate, and the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

39.     The Receiver respectfully requests that the Court enter an Order (i) approving, on an interim basis, the Receiver's fees in the amount of $20,340; Parr Brown's fees in the amount of $303,769 and out-of-pocket expenses of $4,134.39; BRG's fees in the amount of $65,585.50 and out-of-pocket expenses of $15.98; the Conflict Receiver and his counsel's fees in the amount of $3,124; and Arizona Counsel's fees in the amount of $23,077 and out-of-pocket expenses of $3,275.50; and (ii) authorizing the Receiver to pay these fees and reimburse the expenses from the Receivership Estate once the Receiver has recovered for the Estate at least three times the amount of fees requested in this Fee Application and prior applications.

40.     A proposed Order is attached hereto as Exhibit F.

The Receiver, Parr Brown, BRG, the Conflict Receiver and his counsel, and Arizona

Counsel verify under penalty of perjury that the foregoing is true and correct.

DATED this 22nd day of February 2022.

**RECEIVER**


_____/s/ Jonathan O. Hafen_____

Jonathan O. Hafen, Receiver

**PARR BROWN GEE & LOVELESS, P.C.**


_____/s/ Joseph M.R. Covey_____

Joseph M.R. Covey
Cynthia D. Love
*Attorneys for Receiver Jonathan O. Hafen*

**BERKELEY RESEARCH GROUP**


_____/s/ Ray Strong_____

Ray Strong

**CONFLICT RECEIVER**


_____/s/ Wayne Klein_____

Wayne Klein, Conflict Receiver

**MANNING CURTIS BRADSHAW & BEDNAR**


_____/s/ David C. Castleberry_____

David. C. Castleberry
*Attorney for Conflict Receiver Wayne Klein*

**MOYES SELLERS & HENDRICKS**


_____/s/ Keith L. Hendricks_____

Keith L. Hendricks
Arizona Counsel

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the above **THIRTEENTH INTERIM FEE APPLICATION** was (1) electronically filed with the Clerk of the Court through the CM/ECF system on February 22, 2022, which sent notice of the electronic filing to all counsel of record, (2) posted on the Receiver's website (rustrarecoinreceiver.com), and (3) emailed to all those on the Receiver's master mailing matrix.

| | |
|---|---|
| Kristen R. Angelos<br>UTAH FEDERAL DEFENDER OFFICE<br>46 W BROADWAY STE 110<br>SALT LAKE CITY, UT 84101<br>(801)524-4010<br>kris_angelos@fd.org | Walter F. Bugden<br>BUGDEN & ISAACSON LLC<br>445 E 200 S STE 150<br>SALT LAKE CITY, UT 84111<br>(801)467-1700<br>wally@bilaw.net |
| Jennifer Juniper Chapin<br>COMMODITY FUTURES TRADING<br>COMMISSION<br>4900 MAIN ST STE 500<br>KANSAS CITY, MO 64112<br>(816)960-7746<br>jchapin@cftc.gov | P. Matthew Cox<br>SNOW CHRISTENSEN & MARTINEAU<br>10 EXCHANGE PLACE 11TH FL<br>PO BOX 45000<br>SALT LAKE CITY, UT 84145-5000<br>(801)521-9000<br>pmc@scmlaw.com |
| Andrew G. Deiss<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)433-0226<br>adeiss@deisslaw.com | Sean N. Egan<br>SOUTH TEMPLE TOWER STE 1505<br>136 E SOUTH TEMPLE<br>SALT LAKE CITY, UT 84111-1139<br>(801)363-5181<br>(801)363-5184 (fax)<br>seannegan@sneganlaw.com |
| Paula Woodland Faerber<br>UTAH ATTORNEY GENERALS OFFICE<br>160 E 300 S 5TH FLOOR<br>SALT LAKE CITY, UT 84114<br>(801)366-0248<br>pfaerber@agutah.gov | Jacob L. Fonnesbeck<br>SMITH WASHBURN LLP<br>8 E BROADWAY STE 320<br>SALT LAKE CITY, UT 84111<br>(801)584-1800<br>jfonnesbeck@smithwashburn.com |
| Robert K. Hunt<br>UTAH FEDERAL DEFENDER OFFICE<br>46 W BROADWAY SUITE 110<br>SALT LAKE CITY, UTAH 84101<br>(801)524-4010<br>robert_hunt@fd.org | Jennifer R. Korb<br>UTAH ATTORNEY GENERAL'S OFFICE<br>160 E 300 S 5TH FL<br>SALT LAKE CITY, UT 84114<br>(801)366-0310<br>jkorb@agutah.gov |

| | |
|---|---|
| Thomas M. Melton<br>UTAH ATTORNEY GENERAL'S OFFICE<br>160 E 300 S STE 500<br>SALT LAKE CITY, UT 84111<br>(801)366-0320<br>tmelton@agutah.gov | Corey Drew Riley<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)433-0226<br>criley@deisslaw.com |
| John Robinson, Jr.<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)433-0226<br>jrobinson@deisslaw.com | Thomas L. Simek<br>COMMODITY FUTURES TRADING<br>COMMISSION<br>4900 MAIN ST STE 500<br>KANSAS CITY, MO 64112<br>(816)960-7760<br>tsimek@cftc.gov |
| Jessica Stengel<br>46 W BROADWAY STE 110<br>SALT LAKE CITY, UT 84101<br>(801)524-4010<br>jessica_stengel@fd.org | Richard A. Van Wagoner<br>SNOW CHRISTENSEN & MARTINEAU<br>10 EXCHANGE PLACE 11TH FL<br>PO BOX 45000<br>SALT LAKE CITY, UT 84145-5000<br>(801)521-9000<br>rvanwagoner@scmlaw.com |
| D. Loren Washburn<br>SMITH WASHBURN LLP<br>8 E BROADWAY STE 320<br>SALT LAKE CITY, UT 84111<br>(801)584-1800<br>lwashburn@smithwashburn.com | Steven T. Waterman<br>DORSEY & WHITNEY LLP<br>111 S MAIN ST 21ST FL<br>SALT LAKE CITY, UT 84111-2176<br>(801)933-7360<br>waterman.steven@dorsey.com |
| Brenda E. Weinberg<br>DEISS LAW PC<br>10 W 100 S STE 425<br>SALT LAKE CITY, UT 84101<br>(801)933-226<br>bweinberg@deisslaw.com | Robert G. Wing<br>UTAH ATTORNEY GENERAL'S OFFICE<br>(160-5-140872)<br>160 E 300 S 5TH FLOOR<br>PO BOX 140872<br>SALT LAKE CITY, UT 84114-0872<br>(801)599-6891<br>rwing@agutah.gov |

_____ /s/ *Joseph M.R. Covey* _____
Joseph M.R. Covey