IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>STATE OF UTAH DIVISION OF SECURITIES, through Attorney General Sean D. Reyes,<br><br>    Plaintiffs,<br><br>        v.<br><br>RUST RARE COIN INC., a Utah corporation, and GAYLEN DEAN RUST, an individual, DENISE GUNDERSON RUST, an individual, JOSHUA DANIEL RUST, an individual,<br><br>    Defendants,<br><br>and<br><br>ALEESHA RUST FRANKLIN, an individual, R LEGACY RACING INC, a Utah corporation, R LEGACY ENTERTAINMENT LLC, a Utah limited liability company, and R LEGACY INVESTMENTS LLC, a Utah limited liability company.<br><br>    Relief Defendants. | **ORDER AND MEMORANDUM DECISION DENYING NONPARTY OBJECTIONS TO RECEIVER'S CLAIMS REGISTRY**<br><br>Case No. 2:18-cv-00892-TC<br><br>Judge Tena Campbell<br><br>Magistrate Judge Dustin B. Pead |

    Before the court are objections made by Scott Lang and his organization, Be Part of the Music, to the treatment of their claims by Jonathan O. Hafen, the court-appointed Receiver for the assets of Rust Rare Coin Inc. ("RRC"), Gaylen Dean Rust, R Legacy Entertainment LLC, and others (collectively, the "Receivership Defendants"). The Receiver has represented to the

court that he is ready to make an initial distribution to victims of the Ponzi scheme perpetuated by the Receivership Defendants as soon as he resolves any outstanding objections to the treatment of claims in the Claims Registry.[1]

The court held a hearing on October 12, 2023, to listen to argument about outstanding objections. The court overruled an objection filed by Mike Smith but allowed Mr. Lang to file additional evidence demonstrating the value of his losses (see Minute Entry of Oct. 12, 2023, ECF No. 520). The Receiver then filed Mr. Lang's evidence along with the Receiver's response. (Submission Lodging Additional Evidence, ECF No. 521.) The court has carefully examined the evidence provided by Mr. Lang but finds that he has not demonstrated that the Receiver valued his claim incorrectly.

According to the evidence submitted, Mr. Lang ran an organization called Be Part of the Music that provided valuable recruitment, retention, and advocacy resources for K-12 music educators across the country. Beginning in 2015, Mr. Lang signed sponsorship agreements with a number of groups who agreed to pay Be Part of the Music to develop materials that would then be distributed on the internet. (See, e.g., Sponsorship Agreement with MakeMusic, Inc., ECF No. 521 at 35.) Under the terms of these sponsorships, Be Part of the Music was to receive $70,000 for work completed in 2018 and $70,000 for work completed in 2019.[2]

---

[1] On March 27, 2023, the Receiver filed a Notice of Filing Claims Registry Instructions, Claims Bar Date, and Claims Registry. (ECF No. 497.) These documents were sent to all claimants and instructed those claimants to file objections to the treatment of their claims by May 17, 2023. The Receiver reached a consensual resolution with all but two of the claimants who responded. (See Receiver's Submission Lodging Nonparty Objections, ECF No. 518 at 2.)

[2] See, e.g., Sponsorship Agreement with Dansr Company, ECF No. 521 at 19. The Receiver disputes that Mr. Lang provided adequate evidence of these amounts. (See ECF No. 521 at 5 n.7 (arguing that Be Part of the Music was double counting one sponsorship agreement and that another sponsor only agreed to a one-time payment of $12,500).) For the purposes of this objection, the court assumes that Mr. Lang's assertions are correct.

But Mr. Lang terminated his relationship with his previous sponsors in order to sign an agreement with Musician's Tooklkit, a division and dba of R Legacy Entertainment.[3] This agreement commenced on January 1, 2018, and was set to run for three years. (See Sponsorship Agreement with R Legacy Entertainment, ECF No. 518-1 at 17 ¶ 1.2.) In return for the materials produced by Be Part of the Music, Musician's Toolkit agreed to pay a total of $450,000 in monthly installments of $12,500. (Id. ¶ 1.3.) The agreement specified that it would terminate "in the event that Musician's Toolkit becomes insolvent …." (Id. at 20–21 ¶ 3.4.)

Unfortunately, Be Part of the Music only received payment for eight months before Musician's Toolkit stopped making payments. (See Be Part of the Music Claim, ECF No. 518-1 at 9.) The Receiver furloughed all employees and terminated the contracts of all Receivership entities, including R Legacy Entertainment, on November 20, 2018. (ECF No. 518 at 3.)

Be Part of the Music submitted a claim for losses totaling $359,999, which included $47,499 for amounts due from September 2018 through November 2018 that had not been paid, as well as $312,500 for the amounts due under the remaining term of the contract. (See ECF No. 518-1 at 6.) The Receiver allowed a claim for losses only through November 20, 2018, or $42,222.21.[4] (ECF No. 518 at 3.)

Mr. Lang argues that the Receiver undervalued his losses, especially as compared to the Receiver's treatment of defrauded investors. But the court is not persuaded. The Receiver valued the losses of both unsecured creditors like Be Part of the Music and defrauded investors

---

[3] At the hearing, Mr. Lang stated that he was required to terminate his previous sponsorships in order to enter an agreement with R Legacy Entertainment. (See Sponsorship Agreement with R Legacy Entertainment, ECF No. 518-1 at 17 ¶ 1.1 ("Musician's Toolkit will serve as the sole and exclusive sponsor of Be Part of the Music").)

[4] Mr. Lang also submitted a claim for $40,000 for losses for his consultant services. (See Scott Lang Claim, ECF No. 518-2 at 7.) The Receiver allowed only $13,333.33 of this claim, representing the services provided before November 20, 2018. (ECF No. 518 at 4.)

as of the date the court declared the Receivership.  And the court finds that the Receiver valued Be Part of the Music's losses appropriately under either a contract or a tort theory of losses.  The sponsorship agreement stated that it would terminate on the date of Musician Toolkit's insolvency, which occurred no later than November 20, 2018, when the Receiver furloughed all employees.  Therefore, under the contract, Be Part of the Music could only recover for losses representing unpaid invoices before November 20, 2018.  And under a tort theory of fraudulent inducement, Be Part of the Music stood to make approximately $140,000 from the terminated sponsorship agreements for work performed in 2018 and 2019.  Instead, under the agreement with Musician's Toolkit, Be Part of the Music earned around $100,000 for the first eight payments and has been approved for a claim of $42,222.21.  Be Part of the Music has therefore been approved for a loss that approximates the value it could have received if it had not terminated its previous sponsorship agreements in reliance on the new agreement with Musician's Toolkit.

The court understands, of course, that Be Part of the Music suffered greatly by losing the future payments contemplated by the sponsorship agreement with Musician's Toolkit.  But if Musician's Toolkit had merely become bankrupt, Be Part of the Music would have recovered nothing at all.  The court has previously explained that it is because of the money invested by the defrauded investors and the Receiver's ability to claw back ill-gotten gains that victims of the Receivership Defendants stand to recover any funds at all:

> Ultimately, the court agrees with the Receiver's view that equity is best served by treating the unsecured creditors and defrauded investors as being part of the same class.  On the one hand, it is true that the unsecured creditors were, in some sense, less blameworthy than the defrauded investors.  They did not engage in risky behavior like the investors did.  On the other hand, the only reason any funds are available to pay the unsecured creditors is because of the unlawful investments Rust Rare Coin obtained.  If Rust Rare Coin had simply been a normal enterprise

> that had gone out of business, the unsecured creditors likely would have had no recovery at all.  A recovery is possible here because this was a Ponzi scheme and the Receiver was empowered to claw back distributions made to earlier investors.  Accordingly, in some sense, the defrauded investors are subsidizing the recovery of unsecured creditors.

Order Overruling Objections and Granting Receiver's Motion to Approve Distribution Plan, Aug. 20, 2020, ECF No. 341 at 7 (footnotes omitted).

Mr. Lang and Be Part of the Music are innocent victims who suffered greatly from the actions of the Receivership Defendants.  But the court finds that the Receiver has valued their claims in the same manner that the Receiver has valued the claims of other innocent, unsecured creditors and employees.  And for the reasons previously stated, the court agrees with the Receiver that these claims should not be given greater priority than the claims of defrauded investors.

The objections made by Mr. Lang and Be Part of the Music are therefore OVERRULED.  The Receiver should allow $42,222.21 for Be Part of the Music's claim and $13,333.33 for Mr. Lang's claim.  And having resolved all outstanding objections to the treatment of claims, the Receiver may now proceed with his initial distribution.

SO ORDERED this 24th day of October, 2023.

BY THE COURT:

_Tena Campbell_
Tena Campbell
United States District Judge